Dorothea WHITE, Appellant,

v.

UNITED STATES, Appellee.

No. 89–629.

District of Columbia Court of Appeals.

Argued Sept. 12, 1990.

Decided Nov. 27, 1990.

As Amended Dec. 19, 1990.

M. Elizabeth Kent, Washington, D.C., appointed by this court, for appellant.

Patrice Kopistansky, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, TERRY and STEADMAN, Associate Judges.

PER CURIAM:

Appellant Dorothea White over a one-month period cashed ten different checks on which her employer's signature had been forged and an eleventh check which had been altered in amount. She was convicted by a jury of one count of first-degree theft, D.C.Code §§ 22–3811, –3812(a) (1989), eleven counts of forgery, and eleven counts of uttering. *Id.* §§ 22–3841, –3842.[1] We reverse and remand for resentencing because of plain error in failing to instruct the jury that to convict appellant of the level of forgery charged, it must find that each check's value was at least $250. We find without merit appellant's arguments that the forgery and uttering convictions should merge and that other alleged trial court errors, taken together, constitute grounds for a retrial.

I

The facts are straightforward. In the relevant time frame of May and June 1987, the complaining witness, Joseph de Assereto, was the owner of the restaurant Cantina D'Italia and maintained a business account with Madison National Bank, on which only he was authorized to sign checks. His personal account was with First American Bank. De Assereto rarely visited the bank himself because of a disabling injury, but appellant Dorothea White, who worked at the restaurant as a cashier, was authorized to deposit checks in the restaurant account and also to cash checks signed by de Assereto. When de Assereto needed money for his personal use, he would write a check to himself on the business account. He would then have appellant cash it at Madison and deposit the cash in his personal account. Blank checks were kept in an office to which only four people, including appellant, had keys.

De Assereto came to realize that certain checks had been written on the business account which he had not signed. Ten checks dating from May through early June 1987 were identified as fraudulently signed and endorsed with his signature and the amount of an eleventh check had been altered from $350 to $3050. He had received from appellant a deposit slip showing that she had deposited $350 in his account on the altered check, but had received no further proceeds from that check or from any of the other ten checks.

At trial, bank tellers at Madison, who were familiar with appellant because of her banking activities on behalf of her employer, identified appellant as having cashed the eleven checks in question. The custodian of records at appellant's own bank authenticated a bank statement showing an unusual pattern of ten significant cash deposits made by appellant during the May–June period that she was cashing the checks on the Madison account and signifi-

---

1. Appellant received a sentence of two to six years on the theft count, and one to three years on each forgery and uttering count. While all the forgery sentences were concurrent with each other as were the uttering sentences, the theft confinement, the forgery confinement, and the uttering confinement were to run consecutively to each other. Thus the total confinement was four to twelve years.

cantly correlative in time and amount to those checks. A handwriting expert testified that de Assereto did not sign the checks but could not state whether appellant had done so, since the signor had attempted to copy de Assereto's genuine signature.

Appellant in her testimony acknowledged that she believed she had cashed the checks in question but had either deposited the money in de Assereto's personal account or brought the money back to him. As for the deposits to her own account, appellant stated that the money came from her boyfriend, her family, and singing contests at the Apollo Club in New York City. At the close of defense counsel's redirect examination of appellant, the court asked appellant whether she had any documentation supporting the alleged sources of the funds

deposited in her account during May and June, and replied that she did not.

## II

The present District of Columbia provisions relating to forgery in effect create a three-level hierarchy of offenses based upon the types of writings involved or the value of those writings. The highest level, providing for a maximum fine of $10,000, 10 years imprisonment or both, applies to, *inter alia*, forgeries of written instruments having a value of $10,000 or more. D.C. Code § 22–3842(a)(7) (1989). The intermediate level covers written instruments with a value of $250 or more, and provides for a maximum fine of $5,000 or five years imprisonment. *Id.* § 22–3842(b)(3). Finally, there is a lowest "catchall" level applying to all forgeries, and providing for a fine of $2,500 or three years imprisonment. *Id.* § 22–3842(c).[2]

2. The full text of sections 22–3841 and 22–3842, dealing with forgery, reads as follows:

**Forgery.**

(a) For the purposes of this subchapter, the term:

(1) "Forged written instrument" means any written instrument that purports to be genuine but which is not because it:

(A) Has been falsely made, altered, signed, or endorsed;

(B) Contains a false addition or insertion; or

(C) Is a combination of parts of 2 or more genuine written instruments.

(2) "Utter" means to issue, authenticate, transfer, publish, sell, deliver, transmit, present, display, use, or certify.

(3) "Written instrument" includes, but is not limited to, any:

(A) Security, bill of lading, document of title, draft, check, certificate of deposit, and letter of credit, as defined in Title 28;

(B) Stamp, legal tender, or other obligation of any domestic or foreign governmental entity;

(C) Stock certificate, money order, money order blank, traveler's check, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, transferable share, investment contract, voting trust certificate, certification of interest in any tangible or intangible property, and any certificate or receipt for or warrant or right to subscribe to or purchase any of the foregoing items;

(D) Commercial paper or document, or any other commercial instrument containing written or printed matter or the equivalent; or

(E) Other instrument commonly known as a security or so defined by an act of Congress

or a provision of the District of Columbia Code.

(b) A person *commits the offense of forgery if* that person makes, draws, or utters a forged written instrument with intent to defraud or injure another.

D.C.Code § 22–3841 (1989).

**Penalties for forgery.**

(a) Any person convicted of forgery shall be fined not more than $10,000 or imprisoned for not more than 10 years, or both, if the written instrument purports to be:

(1) A stamp, legal tender, bond, check, or other valuable instrument issued by a domestic or foreign government or governmental instrumentality;

(2) A stock certificate, bond, or other instrument representing an interest in or claim against a corporation or other organization of its property;

(3) A public record, or instrument filed in a public office or with a public servant;

(4) A written instrument officially issued or created by a public office, public servant, or government instrumentality;

(5) A check which upon its face appears to be a payroll check;

(6) A deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status; or

(7) A written instrument having a value of $10,000 or more.

(b) Any person convicted of forgery shall be fined not more than $5,000 or imprisoned for not more than 5 years, or both, if the written instrument is or purports to be:

(1) A token, fare card, public transportation transfer certificate, or other article manufac-

The trial court in its instructions failed to make any mention whatever of any need for the jury to make a finding as to the value of the allegedly forged or altered checks.[3] Although appellant made no objection to the instructions as given, she now claims that the failure to instruct on the need for such a finding was "plain error," relying upon *Kind v. United States*, 529 A.2d 294 (D.C.1987). We agree.

In *Kind*, appellant was convicted of possession of a prohibited weapon, in violation of D.C.Code § 22–3214(b) (1989). The case proceeded under the theory that the prohibited weapon was, as the section provides,[4] a "knife with a blade longer than 3 inches." However, the trial court simply instructed the jury that it should convict if it found first, "the defendant possessed a knife, and second, at the time he possessed the knife he had the specific intent to use it unlawfully against any other—against another person." *Id.* at 295 n. 2. The instructions said nothing about a blade in excess of three inches.

We deemed ourselves bound by existing case law establishing that "the failure to instruct the jury on every essential element of the crime is per se reversible 'plain error,' notwithstanding a defendant's failure to object to the instructions as given." *Id.* at 295.[5] We noted the "element of centrality" of the requirement of knife length, part of the statutory definition of the crime itself. Accordingly, we reversed the conviction and remanded for a new trial.

The government here acknowledged at oral argument[6] that the value of the forged instrument is an element of the forgery offense, where such value is used to fix the forgery at either the highest or intermediate level. Although the government suggested that the failure to give the value instruction could be deemed harmless either because appellant admitted cashing the checks and their value was uncontroverted or because the verdict form included a dollar amount, we think that the *per se* rule of *Kind* bars any such disposition of the issue. Plainly the required minimum dollar value of the instruments is as much a "central" or "core" element of the intermediate level of forgery as the required minimum knife length was in the *Kind* offense.

However, there is ample evidence to justify appellant's conviction under the lowest level catchall provision of § 22–3842(c). Under analogous circumstances in *Moore v. United States*, 388 A.2d 889 (D.C.1978), we

---

tured for use as a symbol of value in place of money for the purchase of property or services;

(2) A prescription of a duly licensed physician or other person authorized to issue the same for any controlled substance or other instrument or devices used in the taking or administering of controlled substances for which a prescription is required by law; or

(3) A written instrument having a value of $250 or more.

(c) Any person convicted of forgery shall be fined not more than $2,500 or imprisoned for not more than 3 years, or both, in any other case.

D.C.Code § 22–3842 (1989).

**3.** The government's proposed jury instructions included a $250 value requirement. The instruction given at trial conformed more closely to the standard Criminal Jury Instructions for the District of Columbia, No. 4.53 (3d ed. 1978), which was drafted for use under the old forgery statute which had no minimum value requirements. D.C.Code § 22–1401 (1981).

**4.** The full text of the relevant subsection reads:

(b) No person shall within the District of Columbia possess, with intent to use unlawfully against another, an imitation pistol, or a dagger, dirk, razor, stiletto, or knife with a blade longer than 3 inches, or other dangerous weapon.

D.C.Code § 22–3214. While a knife with a blade shorter than three inches might qualify as a "dangerous weapon" under the final catchall provision, the government did not proceed on that theory and the trial court gave no instruction to the jury concerning the definition of a dangerous weapon. *Kind, supra,* 529 A.2d 295 n. 3.

**5.** We saw the Sixth Amendment right to a trial by jury as the policy underpinning of this doctrine.

**6.** It thus abandoned the position taken in its brief that the value of the instrument became relevant only with respect to sentencing and was not an element of the offense itself. Under this theory, no error at all, much less plain error, was committed by the trial court in omitting any instruction on value.

agreed with appellant that the evidence presented at trial was insufficient to support a grand larceny conviction. Under the now repealed larceny statutes, the value of the stolen goods had to exceed $100 to convict the defendant of grand larceny, with petit larceny covering property valued at less than $100. The government failed to present evidence that would give a jury a firm basis for determining value without conjecture. *Id.* at 891. An appropriate appellate disposition in such cases, we said, is to reverse the grand larceny conviction and remand the case for entry of judgment of conviction for petit larceny and for re-sentencing. *Id.* at 892. Said disposition is equally appropriate here.[7] Accordingly, we reverse appellant's conviction under subsection (b) forgery and remand for entry of judgment for subsection (c) forgery and resentencing.[8]

### III

The next issue is whether appellant's convictions for forgery should merge with her convictions for uttering. Initially, it should be noted that forgery and uttering constitute two distinct offenses, albeit contained in a single statutory provision.

7. As in *Kind,* there is no theoretical bar to a retrial with proper instructions under the intermediate level of forgery, since the evidence presented clearly would support such a conviction. However, in the instant case, the appellant was given concurrent sentences of one to three years for each count of forgery and uttering, a term of imprisonment permitted by subsection (c), and thus any purpose in a retrial is obviated. A resentencing is appropriate, however, since the original sentences were imposed under a belief that the appellant had been properly convicted of the more serious subsection (b) offense.

8. The trial court instructed the jury that the defendant must have acted "with specific intent to defraud." Appellant claims that the trial court committed plain error in failing to further instruct that she must have acted "without authority from the complaining witness," as provided in a bracketed portion of standard jury instruction 4.53 and to further define "intent to defraud" as set forth in standard jury instruction 3.04. As the *Kind* case itself acknowledges, lack of authority in a forgery case is not such an "essential" or "central" element as to require per se reversal. Hence, the failure to instruct on the authority issue is not reversible error where

*Driver v. United States,* 521 A.2d 254, 258 n. 5 (D.C.1987).[9] Therefore, the issue is whether, under the test established by *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the legislature intended to authorize imposition of separate penalties. Appellant acknowledges, as she must, that in their abstract elements, each of the two crimes requires proof of a fact which the other does not; *viz.,* forgery requires proof that the defendant altered or falsely made a document, while uttering requires proof that the defendant passed an instrument known to be false. Otherwise put, to convict of forgery, there need not be proof that the defendant passed or attempted to pass the document, and conversely, in order to convict for uttering, there need not be proof that the defendant was the person who forged the document.

Appellant argues, however, that under a line of cases of this court such as *Curtis v. United States,* 568 A.2d 1074 (D.C.1990), following *Arnold v. United States,* 467 A.2d 136 (D.C.1983), we must look as well to the specific facts of this case. While the government challenges the continued validity of these holdings in light of recent

the evidence against a defendant is strong and the lack of authority clear from the record, as here. *Hall v. United States,* 383 A.2d 1086, 1090 (D.C.1978); *United States v. Gilbert,* 140 U.S. App.D.C. 66, 433 F.2d 1172 (1970). Likewise, "intent to defraud" is not so esoteric a concept that failure to further define it can be deemed plain error. *See Watts v. United States,* 362 A.2d 706, 708 (D.C.1976) (en banc).

9. D.C.Code § 22–3841(b) revised and shortened the language formerly contained in D.C.Code § 22–1401 (1981), which read:

Whoever, with intent to defraud or injure another, falsely makes or alters any writing of a public or private nature, which might operate to the prejudice of another, or passes, utters, or publishes, or attempts to pass, utter, or publish as true and genuine, any paper so falsely made or altered, knowing the same to be false or forged, with the intent to defraud or prejudice the right of another, shall be imprisoned for not less than one year nor more than ten years.

In *Driver,* we held that the legislative history of the new statute "establish[es] that the broad scope of old § 22–1401 ... was intended to be incorporated in § 22–3841." *Id.* at 258.

Supreme Court decisions, citing *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989),[10] we need not decide this issue since even under an examination of the facts here, no merger occurs.

We do not deal here with a single unitary transaction, where the totality of the proof of one offense was equally necessary to prove a requisite component of the other offense, thus effectively making the first offense a *factual* lesser-included of the other offense. Here, the forgery was temporally and conceptually a distinct event from the uttering. In particular, the government was required to prove that specific intent to defraud and absence of authority existed both at the time of the making of the forgery and at the time of the uttering. Proof that such intent existed at one point will not suffice to prove that it also existed at the other.[11] Furthermore, the fact that forgery must precede the uttering will almost always provide the "fork in the road" separation of two distinct offenses so as to warrant separate punishments. *Owens v. United States,* 497 A.2d 1086, 1095 (D.C. 1985), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986) (quoting *Irby v. United States,* 129 U.S.App.D.C. 17, 22–23, 390 F.2d 432, 437–38 (1967) (en banc)). *See Read v. United States,* 55 App.D.C. 43, 45, 299 F. 918, 922, *cert. denied,* 267 U.S. 596, 45 S.Ct. 352, 69 L.Ed. 805 (1924) (when instrument is falsified, offense is complete; when instrument is subsequently uttered, "another and distinct offense is committed").[12]

Thus, it is not remarkable that we have affirmed cases involving multiple sentencing for forgery and uttering convictions, albeit without directly dealing with the merger issue presented here. In *Driver, supra,* the defendant stole blank money orders and presented them to a bank teller. The teller instructed the defendant to fill in the money orders with his name and address, which he did. We noted "that he did not complete them prior to entering the bank, but rather did so at the teller's window upon her instruction, is irrelevant." 521 A.2d at 259. While the question of merger was not distinctly raised, the issue before us was whether the defendant was guilty of both forgery and uttering, which we held to be distinct offenses. Likewise, in *Gholson v. United States,* 532 A.2d 118 (D.C.1987), we affirmed convictions for twelve counts of both forgery and uttering, where the defendant submitted time slips that did not represent work he had performed. We see no reason to arrive at a different result here.

## IV

Finally, appellant argues that the cumulative impact of three asserted trial court errors requires reversal. First, she challenges the trial court's exclusion as irrelevant two proffered documents which allegedly would have established that appellant appeared at the Apollo Club in November 1986 and November 1987,[13] both times separated by many months from the time in question. "An evidentiary ruling by a trial judge on the relevancy of a particular item is a 'highly discretionary decision' that will be upset on appeal only upon a showing of 'grave abuse.'" *Roundtree v. United States,* 581 A.2d 315, 328 (D.C.1990). Furthermore, subsequent to the ruling excluding these documents,

---

**10.** The government in fact has consistently challenged the validity of the Arnold approach by this court, even before any recent Supreme Court decisions.

**11.** Even assuming that such a fact would be relevant, *but see Driver, supra,* there is no indication whatever that the appellant here committed the forgery at some point after the act of uttering had begun with the presentation to the bank teller.

**12.** In contrast, in *Curtis, supra,* the act constituting the offense of assault with a dangerous weapon, the hurling of caustic draining fluid, was the operative element of the malicious disfigurement while armed offense. In *Kingsbury v. United States,* 537 A.2d 208, 211 (D.C.1988), the act of taking the car from the complainant at pistol-point served to prove both the armed robbery and the unauthorized use of a motor vehicle. Similarly, in *Arnold, supra,* the act of the unauthorized taking of the complainant's car was a component of both the grand larceny and the unauthorized use charges.

**13.** In neither the trial nor appellate record is the nature of these documents made clear.

appellant had an opportunity to testify with respect to these documents but instead effectively confirmed their irrelevance.[14] We find no abuse of discretion in the ruling.

■ Second, appellant challenges, for the first time on appeal, the limited questioning by the trial judge of the appellant about possible support for her testimony as to the alternate sources of funds deposited in her account during the relevant period. We recently had occasion to restate several of the settled principles relevant here. "A trial judge, of course, has 'not only the right but the duty ... to participate directly in the trial, including the propounding of questions when it becomes essential to the development of the facts of the case.' This power should be sparingly exercised, however, for it is primarily the task of counsel, not the court, to develop the facts essential to the jurors' understanding of the case." *Davis v. United States*, 567 A.2d 36, 39 (D.C.1989) (citations omitted). We do not think the "sparing exercise" of questioning by the trial court here violated these precepts so as to warrant reversal. The participation was not hostile nor did it contain critical remarks. The answers might have supported the defendant's case. The jury was given the standard instruction that actions of the court in questions to witnesses are not to be taken as any indication of how the jury should determine issues of fact. Criminal Jury Instructions for the District of Columbia, No. 2.02 (3d ed. 1978).

■ Finally, appellant argues that the trial court, over appellant's objection, erroneously gave an instruction to the jury that in considering the credibility of the defendant, the jury may take into account that the defendant has a "vital interest" in the outcome of the trial. *Id.* No. 2.27. We have previously indicated our agreement with then Judge Blackmun that, "as a general rule, '[w]e would prefer that the defendant not be singled out but instead were

included by reference in the court's general instructions as to all witnesses.'" *Clifford v. United States*, 532 A.2d 628, 640 (D.C. 1987) (quoting from *Taylor v. United States*, 390 F.2d 278, 285 (8th Cir.), *cert. denied*, 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137 (1968)). However, in that case, as here, "[t]he instruction given here was well balanced and very mild. It was not inflammatory and did not suggest that defendant should not be believed. It stated no more than what should be obvious to common sense...." *Id.* Thus, in that case, as here, the instruction given "was not so harmful to the defendant ... as to warrant reversal." *Id.* at 641 (quoting from *United States v. Saletko*, 452 F.2d 193, 198 (7th Cir.1971), *cert. denied*, 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972)).

Accordingly, the conviction of first degree theft is affirmed. The convictions on all counts of forgery and uttering under D.C.Code §§ 22–3841, –3842(b) are reversed and the case remanded for entry of judgments of conviction of forgery and uttering under D.C.Code §§ 22–3841, –3842(c) and for resentencing.

*So ordered.*

STEADMAN, Associate Judge, concurring in part and dissenting in part:

I do not think the principle of *Kind v. United States*, 529 A.2d 294 (D.C.1987), is controlling here, and therefore I would affirm all the convictions.

In *United States v. North*, 285 U.S.App. D.C. 343, 910 F.2d 843 (1990), the defendant was convicted, *inter alia*, on a count of aiding and abetting the obstruction of a congressional inquiry. A statutory element of the charged offense was that an "inquiry or investigation is being had" by either House or Senate or a committee thereof. 18 U.S.C. § 1505 (1988). The trial

---

**14.** On re-cross examination, this exchange occurred:

Q. You don't have anything in writing for those dates [the period of the forged checks]. Right?
A. *I don't have anything in writing, period,* from Apollo....

Q. But you do have records for your appearance at the Apollo club earlier?
A. No, I don't.
Q. You don't?
A. I never had any records....

court erroneously removed this element of the offense from the jury by instructing that as a matter of law, congressional inquiries were pending. Nevertheless, the appellate court applied a "harmless error" test, holding that "the mere fact that an error 'deprives the jury of its factfinding role' is not per se grounds for reversal and is subject to harmless error analysis when no rational jury could find the other elements of the offense without finding the fact presumed." 285 U.S.App.D.C. at ——, 910 F.2d at 893 (citing *Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989)).

If harmless error may be applied in such circumstances where the trial court affirmatively removed an element of an offense from jury consideration, I think that plainly it may be applied where an element was not explicitly included in the trial court's instructions but the jury in convicting must necessarily have found the omitted element to have been proven.[1] Such is the case before us.

Here, the indictment specifically charged that each of the eleven checks had a value of $250 or more, and included a photostat of each check. Eight of the checks were for $1,000; two of the checks for $2,000; and the altered check for $3,050. The checks themselves were introduced into evidence. The verdict form itself, sent to the jury room, likewise specified with respect to each check its exact amount. In convicting, the jury could only have found that the offenses were committed with the exact checks included in the indictment and submitted into evidence. No rational jury could have otherwise convicted the defendant.[2]

In this regard, the case differs from *Kind.* In that case, the defendant was convicted of possession of a prohibited weapon, namely, a knife, with intent to use it unlawfully against another person, as well as of assault and destruction of property. The underlying incident was an altercation in an automobile between the defendant and a woman involving a knife. The government introduced into evidence a knife recovered after Kind's arrest from the back floorboard of the car in which the assault took place. 529 A.2d at 296 n. 3. However, particularly under the charge as actually given by the trial court in which no minimum knife length requirement was mentioned, conviction did not necessarily require that the jury accept the proposition that the knife in evidence was the actual knife used in the assault.

I might add that, more generally, I join in the view expressed recently in several federal circuits questioning whether the broad *per se* reversal doctrine of the *Kind* case is "long for this world in light of recent Supreme Court trends." *United States v. Dotson,* 895 F.2d 263, 265 (6th Cir.1990) (citing *Carella v. California, supra; Pope v. Illinois,* 481 U.S. 497, 501–04, 107 S.Ct. 1918, 1921–23, 95 L.Ed.2d 439 (1987); *Rose v. Clark,* 478 U.S. 570, 576–84, 106 S.Ct. 3101, 3105–09, 92 L.Ed.2d 460 (1986)). *See also United States v. Kerley,* 838 F.2d 932 (7th Cir.1988) (no *per se* reversal where essential element of offense is omitted in instructions).

---

1. It appears that at least one other exception may also exist; namely, where the faulty instruction involves "an element of the crime that the defendant in any case admitted." *Carella v. California, supra,* 109 S.Ct. at 2423 (Scalia, J., concurring in the judgment). *But cf. Kind,* 529 A.2d at 296 n. 5 (apparently less than pellucid testimony of the defendant "can be read to indicate his acknowledgment" that the knife introduced into evidence was the knife involved in the incident, but issue still one for jury).

2. The instruction relating to the count of first-degree theft specifically noted that the property wrongfully obtained must be of a value of $250 or more. The prosecutor in the closing argument stressed that if the jury were to find that the defendant engaged in any one of the charged forgeries, she could be convicted on the theft count.