Dorothea WHITE, Appellant,

v.

UNITED STATES, Appellee.

No. 89–CF–629.

District of Columbia Court of Appeals.

Argued En Banc Sept. 26, 1991.

Decided July 28, 1992.

M. Elizabeth Kent, Washington, D.C., appointed by this court, for appellant.

Elizabeth Trosman, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr. and Patrice Kopistansky, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

ON REHEARING EN BANC

Before ROGERS, Chief Judge, and FERREN, TERRY, STEADMAN, SCHWELB, WAGNER and KING, Associate Judges.

STEADMAN, Associate Judge:

A key part of any criminal jury trial is the trial court's instruction to the jury setting forth the elements of the offense of which the defendant stands accused. Occasionally, as in the proceeding on appeal, the trial court will omit an essential element, and the omission is not called to the court's attention by either party.[1] The issue now before us en banc is what consequence should ensue when the omission is first raised at the appellate level as an asserted ground of reversible error. We hold that in such circumstances, the omission will not be the cause for a reversal at least where, as here, the relevant facts are so closely related that no rational jury, shown by its verdict to have found the facts necessary to convict the defendant under the instructions as given, could have failed, if fully instructed on each element, to have found in addition the facts necessary to comprise the omitted element.

I

The facts are set forth at length in the panel opinion, 582 A.2d 774 (D.C.1990),[2] and need only be briefly summarized here. Appellant Dorothea White cashed ten different checks on which her employer's signa-

---

1. The trial court failed to inform the jury that in order to convict the defendant of the "intermediate" level of forgery charged, it must find that each check in question "is or purports to be ... a written instrument having a value of $250 or more." D.C.Code § 22–3842(b)(3) (1989).

2. This opinion was formally vacated, as is the normal rule, by our order granting the petition for rehearing en banc. 592 A.2d 480 (1991).

ture had been forged and an eleventh check which had been altered in amount.[3] Eight of the forged checks were for $1,000 and the remaining two checks for $2,000. The altered check was originally for $350 and raised to $3,050.

White was indicted for one count of theft, eleven counts of forgery, and eleven counts of uttering. Each forgery count in the indictment specifically stated that it related to "a bank check having a value of $250 or more," and bore a photostatic copy of the check in question. Each uttering count incorporated by reference the copy of the check set forth in the related forgery count.

At the trial, the checks themselves were introduced into evidence. Furthermore, the verdict form, sent to the jury room, specified with respect to each check its exact amount. The jury recorded on that form a verdict of guilty on all counts.

## II

The difficulty leading to this en banc rehearing arose because of an oversight in the instructions by the trial court to the jury; viz., the failure to make any mention of the need for the jury to make a finding that each of the allegedly forged or uttered checks was or purported to be of a value of $250 or more.

The relevance of this omission flowed from the provisions of the statute defining the offenses of forgery and uttering. Those provisions in effect create a three-level hierarchy of offenses based upon the types of writings involved or the value of those writings. The highest level, provid-

ing for a maximum fine of $10,000, 10 years imprisonment or both, applies to, *inter alia,* forgeries of written instruments which purport to have a value of $10,000 or more. D.C.Code § 22–3842(a) (1989). The intermediate level covers written instruments which have or purport to have a value of $250 or more, and provides for a maximum fine of $5,000 or five years imprisonment. *Id.* § 22–3842(b). Finally, there is a lowest "catchall" level applying to all forgeries, and providing for a maximum fine of $2,500 or three years imprisonment. *Id.* § 22–3842(c).

The indictment charged White with violations of the intermediate level of forgery, citing § 22–3842(b), and the trial court's judgment and commitment order found the defendant guilty of the offenses charged. Although appellant made no objection at trial to the instructions as given, she now claims on appeal that the failure to instruct the jury on the need to make a finding that the value of each check was $250 or more was per se reversible "plain error," precluding a valid conviction under § 3842(b).

The panel of this court which first heard the appeal agreed, deeming itself bound by the panel decision in *Kind v. United States*, 529 A.2d 294 (D.C.1987). Accordingly, the panel reversed the conviction under § 3842(b) and remanded for entry of judgment of conviction under § 3842(c), finding that there was ample evidence to support a finding of guilt under this catchall provision.[4] The government petitioned for a rehearing en banc, urging the full

---

**3.** The employer, who was disabled, rarely visited the bank himself. Instead, when he needed money, he would write a check to himself on his business account, and have White cash it and deposit the money in his personal account. Blank checks were kept in an office for which only four people, including appellant, had keys. Tellers at the bank, who ·were familiar with White because of these banking activities on behalf of her employer, identified White as having cashed the eleven checks in question. White in her testimony acknowledged that she believed she had cashed the checks in question but claimed she had either deposited the money in her employer's personal account or brought the money back to him.

**4.** White also argued before the panel that the cumulative impact of three asserted trial court errors required a reversal for a new trial, and that in any event, the forgery and uttering convictions should merge. The panel concluded there was no merit in these arguments, 582 A.2d at 778–80, and we see no reason to re-examine these conclusions en banc. We note that with respect to the merger issue, White relied on our fact-based holdings such as *Arnold v. United States*, 467 A.2d 136 (D.C.1983), which were disapproved in our recent en banc holding of *Byrd v. United States*, 598 A.2d 386 (D.C.1991).

court to examine the validity of the rule of per se reversal applied in *Kind*. We granted that petition. 592 A.2d 480.

### III

In *Kind*, appellant was convicted of possession of a prohibited weapon, in violation of D.C.Code § 22–3214(b) (1989). The case proceeded under the theory that the prohibited weapon was, as the subsection provides,[5] a "knife with a blade longer than 3 inches." However, the trial court simply instructed the jury that it should convict if it found first, "the defendant possessed a knife, and second, at the time he possessed the knife he had the specific intent to use it unlawfully against any other—against another person." 529 A.2d at 295 n. 2. The instructions said nothing about a blade in excess of three inches.

We deemed ourselves bound by existing case law [6] establishing that "the failure to instruct the jury on every essential element of the crime is per se reversible 'plain error,' notwithstanding a defendant's failure to object to the instructions as given." *Id.* at 295. We identified the Sixth Amendment right to a trial by jury as the underpinning of the doctrine. We also noted the "element of centrality" of the requirement of knife length, part of the statutory definition of the crime itself. Accordingly we reversed the conviction and remanded for a new trial.

Likewise, the panel in the case before us concluded that "[p]lainly the required minimum dollar value of the instruments is as much a 'central' or 'core' element of the intermediate level of forgery as the required minimum knife length was in the *Kind* offense," *White, supra*, 582 A.2d at 777, and applied the rule of per se reversal.

The *Kind* court found controlling the decision in *(Arthur) Byrd v. United States*, 119 U.S.App.D.C. 360, 342 F.2d 939 (1965). In *Byrd*, the trial court had simply read the text of the robbery statute to the jury. However, that statute was meant to incorporate robbery in the usual common law sense of the term and there were "essential elements" of common law robbery not stated in the statute, such as the specific intent to steal. The appellate court found that "the trial judge's omission to instruct the jury on every essential element of the crime was plain error" and required a new trial. 119 U.S.App.D.C. at 363, 342 F.2d at 942.[7]

However, the limited nature of the scope of the per se reversibility rule was demonstrated by two later cases. In *United States v. Gilbert*, 140 U.S.App.D.C. 66, 433 F.2d 1172 (1970), the defendant was charged with forgery and the government apparently conceded that lack of authority was an essential part of the crime.[8] Although the trial court had charged that "falsity" was part of the crime, it refused, although so requested, to give an instruction on lack of authority. Nonetheless, the

---

**5.** The relevant text of the subsection reads:
   (b) No person shall within the District of Columbia possess, with intent to use unlawfully against another, "[a] ... knife with a blade longer than 3 inches."

**6.** A panel of our court is bound by all prior panel decisions, which can be overruled or modified only by the court sitting en banc. Similarly binding are decisions of the United States Court of Appeals for the District of Columbia Circuit decided prior to February 1, 1971. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971).

**7.** The *Byrd* case was followed in *Jackson v. United States*, 121 U.S.App.D.C. 160, 348 F.2d 772 (1965), in which the trial court gave a "clearly erroneous" instruction on the requisite intent for robbery. The *Kind* court also cited to

*Minor v. United States*, 475 A.2d 414, 416 (D.C. 1984), in which we found reversible plain error where the trial court removed from jury consideration an essential element of the charged offense by directing it that "as a matter of law, I find that the value [of the stolen property] is in excess of $100." In *Minor*, we specifically noted that we were dealing with an "unambiguously directed verdict on an essential element of the crime" and not with instructional error. We do not address here the question of the consequences of a *Minor*-type action by the trial judge.

**8.** The appellate court indicated it was indifferent whether lack of authority is considered a separate element of the offense or a part of the element of falsity. 140 U.S.App.D.C. at 67, 433 F.2d at 1173.

appellate court [9] held the error "harmless" in view of the "overwhelming evidence" against the defendant. We followed *Gilbert* in *Hall v. United States*, 383 A.2d 1086 (D.C.1978), where the trial court again, although this time without objection, failed to instruct on lack of authority as an element of forgery. As in *Gilbert*, we deemed the error to be harmless, since "the circumstantial evidence against appellant was strong and the lack of authority was clear from the record." *Id.* at 1090. In *Kind*, the court distinguished these two holdings on the ground that "[w]e simply cannot say that 'lack of authority' in the context of a forgery charge bears the same element of centrality as the requirement in the case before us of knife length, which is part of the statutory definition of the crime itself." 529 A.2d at 296.

The existence of these somewhat divergent lines of authority was, indeed, recognized by the panel in the case before us. *White, supra*, 582 A.2d at 778 n. 8. While the trial court had instructed the jury that the defendant must have acted "with specific intent to defraud," appellant challenged as plain error the failure of the trial court to instruct that she must have acted "without authority from the complaining witness," and also to further define the meaning of "intent to defraud" as set forth in Criminal Jury Instructions for the District of Columbia, No. 3.04 (3d ed. 1978). Citing *Hall* and *Gilbert*, the panel held that the failure to instruct on the authority issue was not reversible error "where the evidence against a defendant is strong and the lack of authority clear from the record, as here." The panel further held that the phrase "intent to defraud" was not "so esoteric a concept that failure to further define it can be deemed plain error."

The somewhat cloudy nature thus evidenced of our existing jurisprudence on per se reversibility for instructional omissions, when coupled with holdings over the past twenty years by other courts, including the Supreme Court, with respect to the consequences of trial court instructional error, have led us to this en banc sitting.

## IV

The problem before us is one that is little remarked outside of the realm of appellate law specialists and courts.[10] The broad question is simply stated but often answered with difficulty: when an appellate court finds that an error has occurred in a criminal trial, what should the consequences of that error be, and in particular, should the conviction appealed from be set aside and a new trial ordered? [11]

It is "the Supreme Court's oft-repeated directive that a criminal defendant has a right to a fair trial, not to a perfect one. *See, e.g., Ross v. Oklahoma*, 487 U.S. 81, 91, 108 S.Ct. 2273, 2280, 101 L.Ed.2d 80 (1988)." *Allen v. United States*, 603 A.2d 1219, 1228 (D.C.1992) (en banc).[12] Hence, not every error at a trial warrants a reversal, and the quest in every appeal in which some error has been found is to determine whether, in the context of the record of the trial, and by what standard that error should be deemed "reversible error." In general, it may be said that an appellate court may select from four articulated standards, depending upon the nature of the error and the presence or absence of an objection at trial.

9. Judge J. Skelly Wright, the author of the opinion in *Byrd*, was a member of the panel.

10. The classic work on the subject remains that of the late chief justice of California. R. Traynor, The Riddle of Harmless Error (1970).

11. The problem is not unique to criminal appeals, but the law of reversible error has been most fully developed in that context, perhaps because of the significant constitutional overtones.

12. In *Allen*, we included an extensive quote from *United States v. Mechanik*, 475 U.S. 66, 72, 106 S.Ct. 938, 943, 89 L.Ed.2d 50 (1986), in which the Court points out at length the "substantial social costs" entailed in the reversal of a conviction and concludes: "These [and other] societal costs of reversal and retrial are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue of guilt or innocence. But the balance of interest tips decidedly the other way when an error has had no effect on the outcome of the trial."

■ The strictest standard, of course, is that of per se reversal, in which the actual effect of the error upon the trial proceedings is not considered at all. While at one time it might have been thought that any constitutional violation during the course of a trial should entitle the defendant to a new trial, the Supreme Court in its landmark decision of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) rejected such a proposition. Instead, it pronounced the standard, applicable to most constitutional errors, that an otherwise valid conviction should not be set aside if the reviewing court can say "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," or, as the Court put it in the precise holding of *Chapman,* "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. This is often referred to as the *Chapman* test for constitutional harmless error. Thus, the latest Supreme Court pronouncement holds that per se reversals for constitutional error are confined to "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards," such as the total deprivation of the right to counsel at trial or a judge who is not impartial. *Arizona v. Fulminante,* —— U.S. ——, ——, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991).

■ Where an error is not of constitutional dimension, a less exacting standard is applied. There, an error will be considered grounds for reversal where the appellate court "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).[13] This is often referred to as the *Kotteakos* test for nonconstitutional harmless error.

■ Finally, there is the so-called "plain error" standard. This standard is invoked in circumstances where the defendant has failed to object at trial to the error complained of on appeal. In such circumstances, the asserted error will be grounds for reversal only if it is "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial," *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc), that is, "reversal under the plain error standard is justified only in exceptional circumstances where 'a miscarriage of justice would otherwise result.'" *Harris v. United States, supra* note 13, 602 A.2d at 159 (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592, n. 14, 71 L.Ed.2d 816 (1982)).

The reasons for the application of a stringent standard for reversal in the absence of objection at trial were cogently set forth in *Watts, supra,* 362 A.2d at 708–09 (citations omitted):

The obvious reason for requiring that objections to instructions be made before the jury retires is to afford the trial court an opportunity to correct any instructional defect and thereby avoid error which otherwise might necessitate a new trial. In order to discourage the intentional withholding of objections by defense counsel, errors not objected to at trial are unreachable on review unless they fall within the purview of the plain error rule. Under that standard, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.

We have in a number of subsequent cases rearticulated the plain error standard and its rationale. *See, e.g., Harris v. United States, supra; Irick v. United States,* 565 A.2d 26, 32 (D.C.1989); *Allen v. United States,* 495 A.2d 1145, 1150–54 (D.C.1985) (en banc); *see also, e.g., United States v. Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1984); *United States v. Frady, supra,* 456 U.S. at 163 & n. 14, 102 S.Ct. at 1592 & n. 14.

13. This standard has of course been set forth in a myriad number of our cases. *See, e.g., Harris v. United States,* 602 A.2d 154, 159 (D.C.1992) (en banc).

With this background, we turn to a consideration of the proper standard to be applied in the circumstances presented here.

## V

### A

We turn to recent Supreme Court decisions for its current teaching as to when constitutional error is per se reversible and when such error may be subjected to some form of harmless error test.[14]

Since its decision in *Chapman v. California, supra,* the Supreme Court has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). In *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Supreme Court took the occasion to note the wide variety of trial court constitutional errors which have been weighed for reversibility under the *Chapman* test. It said:

> "Our application of harmless-error analysis in these cases has not reflected a denigration of the constitutional rights involved. Instead ... [t]he harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence ... and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial er-

ror. *Cf.* R. TRAYNOR, THE RIDDLE OF HARMLESS ERROR 50 (1970) ('Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.')".

*Rose, supra,* 478 U.S. at 577, 106 S.Ct. at 3105 (quoting *Delaware v. Van Arsdall, supra,* 475 U.S. at 681, 106 S.Ct. at 1436).

The Court noted, however, that "[d]espite the strong interests that support the harmless-error doctrine ... *Chapman* recognized that some constitutional errors require reversal without regard to the evidence in the particular case." *Id.* As examples, it mentioned the *Chapman* citations of cases finding per se reversible error in the complete denial of the right to counsel and adjudication by a biased judge.[15] With respect to these examples, the Court commented: "This limitation recognizes that some errors necessarily render a trial fundamentally unfair.... Without these basic protections [a trial before an impartial judge with counsel] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Rose, supra,* 478 U.S. at 577–78, 106 S.Ct. at 3106 (citations omitted). The Court then noted that "[s]imilarly, harmless error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury" citing the Sixth Amendment right to a trial by jury. "Where that right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty.... We have emphasized, however, that while there

---

**14.** There is a certain overlap in the relevant cases between concerns over the proper allocation of responsibilities between court and jury, which bears upon the failure to give an instruction or the removal by the trial court of an essential element of the crime from jury consideration, and concern over the related but conceptually distinct requirement that the prosecution must prove by evidence every essential element of the charged crime. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). While the giving of an instruction as to a mandatory presumption bears mainly on the latter consideration, the failure to require the jury to

consider an essential element of the crime (either by express removal of the issue by the trial court or by omission of any instruction on that element as part of requisite proof) bears mainly upon the former consideration, since the evidence may in fact be clearly sufficient, perhaps overwhelmingly so, to prove the requisite fact.

**15.** It also mentioned the example of introduction of a coerced confession, a ground of per se reversible error subsequently rejected in *Arizona v. Fulminante, supra.*

are some errors to which Chapman does not apply, they are the exception and not the rule." *Id.* at 578, 106 S.Ct. at 3106.[16]

The next year, in *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987), the Court had occasion to revisit the issue of instructional error. In a pornography prosecution, the Court found that the trial court erred in instructing the jury that it should judge the obscenity of the material by determining how it would be viewed by ordinary adults in Illinois, rather than, as constitutionally required, on an objective basis; viz., whether a reasonable person would find value in the material, taken as a whole. *Id.* at 499, 107 S.Ct. at 1920. Turning to the question of disposition, the Court invoked *Rose v. Clark,* holding that "[w]hile it was error to instruct the juries to use a state community standard in considering the value question, if a reviewing court concludes that no rational juror, if properly instructed, could find value in the magazines, the convictions should stand." *Id.* at 503, 107 S.Ct. at 1922.

In 1989, in *Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), the Court was faced with an appeal where the trial instructions had created a conclusive presumption as to "core elements" of the charged crime. The Court remanded for a determination whether the giving of the constitutionally erroneous instructions constituted harmless error. In remanding, the Court noted that it thus need not itself decide at that point "whether no rational jury could find the predicate acts but fail to find the fact presumed." *Id.* at 267, 109 S.Ct. at 2421 (citing *Rose v. Clark,* 478 U.S. at 580–81, 106 S.Ct. at 3107).[17]

Justice Scalia, writing for himself and three other members of the Court, expanded upon his view of the meaning and application of the harmless error doctrine in this context. He noted that in the usual case, the determination of harmlessness is made by consideration of the trial record as a whole in order to decide whether the fact supported by improperly admitted evidence was in any event overwhelmingly established by other evidence. However, he asserted, this test is improper in dealing with instructional error, because, as noted in *Sandstrom,* the problem of mandatory conclusive presumptions is not only that it conflicts with the overriding presumption of innocence, but also that it "invades the factfinding function which in a criminal case the law assigns solely to the jury." *Carella, supra,* 491 U.S. at 268, 109 S.Ct. at 2422 (quoting *Sandstrom, supra,* 442 U.S. at 523, 99 S.Ct. at 2459). Because the constitutional right to a jury trial is a structural guarantee that reflects a fundamental decision about the exercise of official power, "[a] defendant may assuredly insist upon observance of this guarantee even when the evidence against him is so overwhelming as to establish guilt beyond a reasonable doubt." *Id.* Justice Scalia noted that he concurred in *Pope* only because he believed that "no rational jury" could plausibly have found the magazines utterly lacking in value under a community standard and come to a different conclusion under a reasonable person standard. Under his analysis, Justice Scalia proposed the following test: that such an instructional error be found harmless "[w]hen the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could

16. In *Rose v. Clark,* as in the case before us, there was no directed verdict, and the jury right was not "altogether denied." Rather, there was constitutional error in instructing on presumptions, in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The Court concluded that the error was not "so basic to a fair trial" that it could never be harmless. It rejected the idea that *Sandstrom* error is equivalent to a directed verdict. 478 U.S. at 580, 106 S.Ct. at 3106.

17. That portion of the *Rose v. Clark* opinion reads: "In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not *intend* to cause injury. In that event the erroneous instruction is simply superfluous: the jury has found, in *Winship's* words, 'every fact necessary' to establish every element of the offense beyond a reasonable doubt." *Id.* (emphasis in original) (citations omitted).

find those facts without also finding that ultimate fact," because making those findings is functionally equivalent to finding the element required to be presumed. *Id.* at 271, 109 S.Ct. at 2423.

Last term, in *Yates v. Evatt,* —— U.S. ——, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), the Supreme Court dealt again with the application of a harmless error test to a case of unconstitutional presumptions contained in trial court instructions. It noted that "[t]o say that an instruction to apply an unconstitutional presumption did not contribute to the verdict is to make a judgment about the significance of the presumption to reasonable jurors...." *Id.* —— U.S. at ——, 111 S.Ct. at 1893. It adopted a two-step process to arrive at this judgment; first, to examine what evidence the jury actually considered in reaching the verdict,[18] and second, whether the force of the evidence presumably considered by the jury was so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption. Turning to the case before it, the Court found that while it could infer with confidence that the jury had considered all the evidence relevant to malice (the element subject to the erroneous instruction), the weight of that evidence apart from the presumptions was insufficient to meet the harmless error test as applicable to this situation.[19]

Finally, we take note of the Court's latest pronouncement on the circumstances in which per se error will be found. In *Arizona v. Fulminante,* —— U.S. ——, ——, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991), the Court held that an admission of a coerced confession was not per se reversible error, but rather subject to *Chapman*

harmless error analysis. In the opinion, the Court recognized that "most constitutional errors can be harmless." *Id.* —— U.S. at ——, 111 S.Ct. at 1263. It restricted per se reversibility only to "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards," citing as examples the "total deprivation" of the right to counsel, a judge who was not impartial, the unlawful exclusion of members of a defendant's race from a grand jury, the right to self-representation at trial, and the right to public trial. *Id.* —— U.S. at ——, 111 S.Ct. at 1265. "Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'" *Id.* (quoting *Rose, supra,* 478 U.S. at 577–78, 106 S.Ct. at 3106).

■ We think several conclusions may fairly be drawn from these cases: first, that the Supreme Court has refused to apply a rule of per se reversal in all cases of instructional error, even those affecting core elements of the charged offense, and second, that in fashioning a harmless error standard, it is not unprepared under all circumstances to consider what a "rational jury" would do. In particular, we think the Court would place the question of incomplete or inaccurate jury instructions within the category of errors in the trial process itself, rather than that of structural defects involving basic protections without which no criminal punishment may be regarded as fundamentally fair.

---

18. The answer to this inquiry comes, not from a subjective inquiry into the jurors' minds, but rather from an analysis of the instructions given to the jury and the presumption that jurors follow instructions. As the Court later noted, "the terms of some presumptions so narrow the jury's focus so as to leave it questionable that a reasonable juror would look to anything but the evidence establishing the predicate fact in order to infer the fact presumed." *Id.* —— U.S. at ——, 111 S.Ct. at 1894.

19. The Court did not advert to the fact that appellant had made no objection at trial in this capital case. On a previous appeal, the disputed issue was whether the state court could refuse to apply a presumption decision retroactively. *Yates v. Aiken,* 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988).

## B

Our companion federal appellate court came to much the same conclusion in its recent holding of *United States v. North*, 285 U.S.App.D.C. 343, 910 F.2d 843, *modified in part on other grounds*, 287 U.S.App.D.C. 146, 920 F.2d 940 (1990), *cert. denied*, ⎯ U.S. ⎯, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991). There the defendant was convicted, *inter alia*, on a count of aiding and abetting the obstruction of a congressional inquiry. A statutory element of the charged offense was that an "inquiry or investigation is being had" by either the House or the Senate or a committee thereof. 18 U.S.C. § 1505 (1988). The trial court erroneously and over the defendant's objection removed this element of the offense from the jury by instructing that as a matter of law, congressional inquiries were pending. Nevertheless, the appellate court applied a "harmless error" test, holding that "[t]he mere fact that an error 'deprives the jury of its factfinding role' is not *per se* grounds for reversal ... and *is* subject to harmless error analysis where no rational jury could find the other elements of the offense without finding the fact presumed." *North, supra*, 285 U.S.App.D.C. at 393, 910 F.2d at 893 (citing *Carella, supra*, 491 U.S. at 267, 109 S.Ct. at 2421) (emphasis in original). It then reasoned that on the record, no rational jury could find that North knew of the pending congressional investigation, endeavored to obstruct it, and did so with specific corrupt intent "without concomitantly finding that the investigation was pending in the first place."[20] If harmless error may be found where a trial court, over objection, affirmatively removed an element of an offense from jury consideration, surely harmless error may be found in the case of an unobjected to omission of an element from an instruction, where a rational jury in convicting would necessarily have found the omitted element to have been proven.[21]

Several recent cases from the other circuits have likewise rejected any per se reversal for erroneous or omitted jury instructions. In *United States v. Kerley*, 838 F.2d 932 (7th Cir.1988), the defendant was charged with failing to register for the draft. The trial court omitted instructing the jury that an element of the offense was that the defendant know he had a duty to register. The appellate court reviewed under a "plain error" standard, and concluded that "[n]o reasonable jury could have concluded that Kerley did not know he had a legal duty to register." *Id.* at 937. Although the *Kerley* court was willing to acknowledge that even a partial directed verdict would be per se reversible error, it distinguished the situation where the trial court "merely failed to instruct clearly on an element of the crime." It noted, citing *Pope v. Illinois, supra*, that the Supreme Court had squarely rejected the proposition that a conviction can never stand if the instructions misstate the proper standard of proof and found no reason to treat an omission as any different: "The Court's emphasis in *Pope* was on the effect, rather than character, of the error." *Id.* at 938. It also cited several prior decisions of that circuit which "both express a reluctance to reverse a conviction because of defective instructions even if the defects concern the elements of the crime, unless the defects might have made a difference to a rational jury." *Id.* at 939. Viewing the situation in other circuits, it correctly described the picture as "mixed."[22]

It concluded that "[w]e prefer the statement by the Second Circuit that '*in gener-*

**20.** The opinion distinguished three pre-*Carella* cases relied upon by the dissent, noting that in none of them "was the undisputed fact found by the trial judge a logical prerequisite for the jury's finding of the other elements of the crime...." 285 U.S.App.D.C. at 394 n. 28, 910 F.2d at 894 n. 28.

**21.** Another circumstance where an erroneous instruction may not result in reversible error is where the defendant admitted the requisite factual basis for that element. *Carella*, 491 U.S. at

270, 109 S.Ct. at 2423 (Scalia, J., concurring in the judgment) (citing *Connecticut v. Johnson*, 460 U.S. 73, 87, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983)).

**22.** In *State v. Teel*, 793 S.W.2d 236 (Tenn.), *cert. denied*, ⎯ U.S. ⎯, 111 S.Ct. 571, 112 L.Ed.2d 577 (1990), a felony murder case, the trial court's failure to instruct on the definition of the underlying felony of rape was held to be harmless error. In dissenting to the Supreme Court's denial of certiorari, Justice White wrote:

*al,* failure to instruct the jury on an essential element of the offense constitutes plain error.' *United States v. Golomb,* 811 F.2d 787, 793 (2d Cir.1987) (emphasis added) ... That formulation allows for the exceptional case, and this is one." *Id.* (citations omitted). Applying that standard to the case before it, the court noted that the failure was to distinguish between knowledge of fact and knowledge of legal duty, and that the issue of guilty knowledge was not contestable and was barely if at all contested. Hence, the court found no plain error. On rehearing, however, the defendant successfully pointed out to the appellate court that he had in fact objected to the erroneous instruction. The *Kerley* court issued a supplemental opinion, noting that "[a]lthough the error was not plain, the government does not argue that it was harmless; it was therefore a reversible error, so Kerley is entitled to a new trial." *Id.* at 942.

In sum, we think it fair to say that the present trend in recent federal circuit court decisions is to reject any per se rule for instructional error on the elements of the crime. In addition to the above cases, *see, e.g., Hennessy v. Goldsmith,* 929 F.2d 511, 514–17 (9th Cir.1991) (failure properly to instruct jury regarding "voluntary release" element of kidnapping offense subject to harmless error analysis); *United States v. Dotson,* 895 F.2d 263 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 94, 112 L.Ed.2d 66 (1990) (failure to instruct that jury must find beyond reasonable doubt that defendant committed underlying drug offense held harmless error).

### VI

From this survey of recent case law, we conclude that *Kind, supra,* 529 A.2d at

As the Tennessee Supreme Court noted, a conflict of authority exists concerning the availability of harmless error analysis in this situation. Several courts of appeal have held that error resulting from a failure to give proper instructions on the essential elements of an offense cannot be harmless. *Hoover v. Garfield Heights Municipal Court,* 802 F.2d 168, 175–79 (CA6 1986); *United States v. Howard,* 506 F.2d 1131, 1133–34 (CA2 1974); *United States v. Gaither,* 440 F.2d 262, 264 (CADC 1971). Others have held that harmless error analysis can apply. *Redding v. Benson,* 739 F.2d 1360 (CA8 1984), *cert. denied,* 469 U.S. 1222, 105 S.Ct. 1210, 84 L.Ed.2d 352 (1985);

295, was erroneous in its assertion that the failure to instruct on every essential element of the crime is per se reversible plain error.[23] Rather, we hold that, at least where no objection is raised at trial to the instructions as given, any such error will not be a cause for reversal where the relevant facts are so closely related that no rational jury, shown by its verdict to have found the facts necessary to convict the defendant under the instructions as given, could have failed, if fully instructed on each element, to have found in addition the facts necessary to comprise the omitted element.[24]

Here, the indictment was specific in identifying the checks in question, to the point of physically incorporating them through photostats into the indictment form. Each of the checks was introduced into evidence. There was not a shred of testimony which suggested that the offenses were committed with any other checks. Every one of the checks was in an amount in excess of $250, a fact never contested although plainly relevant by the terms of the indictment. We think it indisputable on this record that "no rational jury" could have found that "the writing in question was falsely made or altered by the defendant," as the instructions required, and not found that that "writing in question" was or purported to be of a value in excess of $250.

The judgment below is accordingly

*Affirmed.*

*Bell v. Watkins,* 692 F.2d 999, 1004 (CA5 1982). The depth of this conflict underscores the importance of the question. Both considerations counsel for a grant of certiorari.

23. We must come to a similar conclusion with respect to any such assertions contained in *(Arthur) Byrd v. United States, supra,* and *Jackson v. United States, supra,* upon which *Kind* rested.

24. We do not reach any questions of reversibility *vel non* in cases of instructional omission which do not meet the test utilized here.