**Harold O'BRIEN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 80–1385.**

District of Columbia Court of Appeals.

Argued Feb. 9, 1982.

Decided April 6, 1982.

Earl Glass, Alexandria, for appellant.

Lisa J. Stark, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty. at the time the brief was filed, John A. Terry and David E. Sellinger, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and BELSON, Associate Judges.

NEWMAN, Chief Judge:

This is an appeal of a conviction for unlawful entry, D.C.Code 1981, § 22–3102, based on appellant's refusal to desist from handing out commercial leaflets on Washington Metropolitan Area Transit Authority (WMATA) property. Appellant challenges his conviction on the ground that because the applicable WMATA regulations impermissibly restrict the exercise of his First Amendment rights, the application of the unlawful entry statute is constitutionally precluded. We affirm his conviction.

I

On the morning of March 28, 1980, appellant was distributing commercial handbills at the Judiciary Square Metro station. Standing on WMATA property at the top and just to the right of the only upward bound escalator at the Fourth and D Streets exit from the station, appellant attempted to hand leaflets[1] to persons alighting from the escalator.

Sometime between approximately 7:15 and 7:45 a. m., appellant was advised by an officer of the Metro Transit Police that Metro regulations prohibit the distribution of leaflets at that location. The officer explained to appellant O'Brien that he was free to continue distribution on the public sidewalk a few feet away. Appellant refused to cease his activities and advised the officer to either arrest him or leave him alone.

Thereafter, appellant was again advised by another Metro Transit Police officer that he could not distribute leaflets at the top of the escalator. When appellant refused to leave, she arrested him.

---

1. The handbill stated in pertinent part: "Earn up to $1,000 per day, $6,000 per week, or $300,000.00 per year as a masseuse for room service in the following Washington, D. C. major hotels . . . ." The parties do not contest that this leaflet contains "expression related solely to the economic interests of the speaker and its audience," *Central Hudson Gas and Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 561, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980) (citations omitted), and thus constitutes commercial speech.

The trial judge, after hearing post-trial arguments on whether appellant's activity was protected by the First Amendment, found him guilty of unlawful entry.

## II

The District of Columbia unlawful entry statute provides for the punishment of anyone who remains on either private or public property without lawful authority and who refuses to leave on the demand of the person lawfully in charge. As applied to private property, the two components of the statute merge. The mere demand of the person lawfully in charge to leave necessarily deprives the other party of any lawful authority to remain on the premises. *Feldt v. Marriott Corp.*, D.C.App., 322 A.2d 913, 915–16 (1974). In contrast, as to public property, the statute requires: (1) that a person lawfully in charge of the premises expressly order the party to leave, and (2) that, in addition to and independent of the evictor's wishes, there exists some additional specific factor establishing the party's lack of a legal right to remain. *Carson v. United States*, D.C.App., 419 A.2d 996, 998 (1980); *Leiss v. United States*, D.C.App., 364 A.2d 803 (1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977).

Appellant's activities took place on WMATA property, which all parties concede should be considered public property for purposes of applying the statute. Thus, we must consider whether, in addition to the officers' order to leave, there existed a specific factor establishing appellant's lack of a legal right to remain next to the escalator.

Two different WMATA regulations prohibited appellant's activities and may serve as additional factors. Regulation 5 of the Washington Metropolitan Area Transit Authority Rules and Regulations of Free Speech provides:

> All free speech activities are to take place at a distance greater than 15 feet from any escalator, stairwell, faregates, kiosk, or fare card machine. On street level areas, free speech activities are to take place in an area greater than 15 feet from any escalator, bus stop or shelter.

WMATA regulations also proscribe all commercial activity within the transit system except for strictly controlled billboarding in free standing areas and public telephones. Appellant does not dispute that he was in violation of both the regulation prohibiting activities within 15 feet of an escalator and the regulation prohibiting commercial activities.

Because we think that appellant's violation of the 15 foot regulation supports the lawfulness of his conviction, we do not reach the issue of the validity of the total ban on commercial speech as applied to the appellant.

## III

The First Amendment does not guarantee appellant the right to communicate his views at all times and places or in any manner he wishes. The government may regulate speech and communicative conduct on public property if it does so in a narrow and reasonably necessary manner which serves significant governmental interests, *see Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981); *Grayned v. City of Rockford*, 408 U.S. 104, 115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972); *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and is content-neutral and non-discriminatory, *see United States Postal Service v. Council of Greenburgh Civil Associations*, 453 U.S. 114, 101 S.Ct. 2676, 2686, 69 L.Ed.2d 517 (1981); *Consolidated Edison Co. v. Public Service Commission*, 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980); *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95–96, 92 S.Ct. 2286, 2289–90, 33 L.Ed.2d 212 (1972). Factors to be weighed in determining the reasonableness of any restrictions infringing on free expression include "the nature of the particular public property, the weight of the governmental interests involved, the availability of alternative avenues of expression, and the extent to which the regulation unnecessarily interferes with First Amendment rights." *Leiss*

*v. United States, supra* at 808. Additionally, the fact that this case involves commercial speech means that appellant's activity is afforded significantly less protection than if he were engaged in non-commercial speech. *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978).

▮ Washington Metropolitan Area Transit Authority's 15 foot regulation, which appellant concedes he violated, is a valid time, place, and manner restriction. The rule applies evenhandedly to all those who wish to distribute written materials and is content neutral. The regulation also serves a significant governmental interest by ensuring an orderly flow of pedestrian traffic on and off the escalator and, in turn, avoiding congestion at the escalator's entrance or exit which could cause injury. *Compare Heffron v. International Society for Krishna Consciousness, Inc., supra* (in order to maintain the orderly movement of the crowd through a large number of exhibits at a state fair, the state may restrict distribution of religious literature and solicitation of donations to designated areas). Where the escalators are a necessary conduit for Metro riders, where they are often congested, and where one mishap could have cruel consequences, the state interest in maintaining orderly movement is surely significant.

A ban within 15 feet, as opposed to 10 feet or 12 feet, has no magical significance. However, it directly advances the governmental interest asserted and is reasonably narrow, given the necessity of restricting this activity where congestion and the interruption of pedestrian traffic poses the greatest danger. *Compare Cameron v. Johnson*, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) (picketing may be restricted so as not to interfere with ingress and egress at county courthouse), *International Society for Krishna Consciousness, Inc. v. McAvey*, 450 F.Supp. 1265 (S.D.N.Y. 1978) (denial of preliminary injunction to enjoin Port Authority from enforcing regulation, which, *inter alia*, barred Krishna religious activities to a distance of 15 feet from elevators, stairways, escalators, and doors in World Trade Center.)

It is undisputed that appellant was informed that he could continue his leafletting without interruption if he moved to the sidewalk. At that location, there is no dispute but that appellant could have reached the very same audience he was soliciting when arrested.

▮▮ Given that there existed an alternative area for appellant's communication a mere 15 feet away, that only limited protection is afforded his commercial speech, and that there is a legitimate government interest in the safety of commuters traveling within the subway system, the 15 foot rule is a valid restriction.[2] If the question is "whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time," *Grayned v. City of Rockford, supra*, 408 U.S. at 116, 92 S.Ct. at 2302, the answer in this case is yes.

### IV

Accordingly, we find that appellant violated a valid regulation which deprived him

**2.** Appellant argues that the 15 foot regulation is impermissibly overbroad. In the First Amendment area, the Supreme Court has permitted attacks on statutes which regulate too much speech without requiring that the person making the attack demonstrate that in fact his specific conduct was protected. *See, e.g., Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). The reason for this special rule in First Amendment cases—that a person who contemplates protected activity may be deterred by the regulation—"applies weakly, if at all, in the ordinary commercial context." *Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977). Just as the Supreme Court declined to apply the overbreadth doctrine to professional advertising in *Bates*, we refuse to apply it to appellant's commercial advertising. Even if this commercial speaker was allowed to mount an overbreadth attack, "[t]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). We have no difficulty in finding that the 15 foot regulation on free speech activities does not meet this test.

of a legal right to remain where he was once the transit police requested that he leave. Thus, neither his arrest nor conviction violates his First Amendment rights.

*Affirmed.*