Michael L. HASTY, Appellant,

v.

UNITED STATES, Appellee.

No. 87–CM–1230.

District of Columbia Court of Appeals.

Argued June 14, 1994.*

Decided Dec. 18, 1995.

* After oral argument, the court ordered, and the parties submitted, supplemental briefs.

Severina B. Rivera, appointed by the court, Washington, DC, for appellant.

Thomas J. Tourish, Jr., Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese III and Thomas C. Black, Assistant United States Attorneys were on the brief, for appellee.

Before WAGNER, Chief Judge, and SCHWELB, Associate Judge, and GALLAGHER, Senior Judge.

Concurring opinion by Senior Judge GALLAGHER at p. 136.

WAGNER, Chief Judge:

Appellant, Michael L. Hasty, was charged with one count of demonstrating in the United States Capitol Building (the Capitol) in violation of D.C.Code § 9–112(b)(7) (1989), and one count of unlawful entry of the Capitol in violation of D.C.Code § 22–3102 (1989). The charges arose out of a demonstration in the Rotunda of the Capitol. Following a jury trial, Hasty and a co-defendant, Donald Remmey, were found guilty on each count. On appeal, Hasty's principal argument is that the trial court erred in failing to instruct the jury on the "tourist standard," i.e., that in order to find him guilty under D.C.Code § 9–112(b)(7), the government had the burden of proving that his conduct was more disruptive or more substantial than that normally engaged in by tourists.[1] We conclude that the narrow construction accorded by this court to D.C.Code § 9–112(b)(7), in order to avoid constitutional overbreadth, requires that where, as here, provisions of the statute would be unconstitutional absent such an interpretation, the court must assure that a defendant's conviction is based upon the statute as construed. On the particular facts of this case, the jury instruction given by the trial court was not adequate to meet this requirement.

## I.

Hasty's convictions arose out of a demonstration in the Rotunda of the Capitol Building on April 15, 1987 which was organized to protest then-President Reagan's policies in Central America. The demonstration was authorized to take place on the east front center steps of the Capitol at noontime. At approximately 1:26 p.m., Hasty and fourteen other demonstrators entered the Capitol and formed a circle in the center of the Rotunda where they began to pray aloud. Lieutenant Robert V. Howse, a member of the U.S. Capitol police force, approached the group and asked them to move on, but they continued praying. Using a bullhorn, Lt. Howse warned the group to cease and desist and to leave the Rotunda. The group ignored the officer, kneeled, and continued with their prayers. At approximately 1:31 p.m., Officer Michael Dodgson and Officer Vodkoe went to each member of the group and informed him or her individually that if they failed to leave the Rotunda immediately, they would be placed under arrest. Every one in the group refused to leave, and Hasty and the others were placed under arrest.

Lieutenant Howse testified that the group's position in the center of the Rotunda blocked passage through the area and that the officers asked the group to move on in order to keep the passageway clear. He further testified that the officers asked the group to cease and desist because their activities constituted a demonstration, which was unlawful in the Rotunda. During the entire incident, which lasted about five minutes, three to four hundred tourists were inside the Rotunda. Some of them began singing along with Hasty and his companions. However, when asked to stop singing, these tourists complied, and the police did not arrest them.

Hasty testified that he went to the center of the Rotunda to meet the others and to pray as a "sign of their faith." He testified that the group formed a circle, recited prayers, read, and knelt in silent prayer, and some of them began singing. He admitted hearing the officer ordering the group to cease and desist over the bullhorn, but he

---

1. See *Dellums v. Powell*, 184 U.S.App.D.C. 275, 313 n. 22, 566 F.2d 167, 205 n. 22 (1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (appending *United States v. Nicholson*, 97 Daily Wash.L.Rptr. 1213 (D.C.Super.Ct. June 19, 1969)).

chose to ignore the order because he was deeply in prayer. He also testified that he refused to leave when the police asked him to because he "had every right to be there."

At the conclusion of the government's case, Hasty made a motion for a judgment of acquittal on the ground that the government had failed to prove that his conduct was "a substantial disruption of the usual business of the rotunda or congressional business." The trial court denied the motion. The court also declined to give the jury an instruction explaining the "tourist standard" as a part of the definition of demonstrating. Instead, the court provided the following definition:

> "A demonstration" ... is a public showing or display by a group of persons assembled together of their feelings, such as sympathy or antagonism, toward a cause or action of public interest, which showing or display, by its very nature, necessarily intrudes upon the senses of those within earshot or eyesight.

## II.

Hasty argues that the trial court erred in refusing to include the "tourist standard" in the jury instruction defining "demonstrating." He contends that: (1) the "tourist standard" is an essential element of § 9–112(b)(7); and (2) under the tourist standard, he could not be found guilty unless his conduct was substantially more disruptive than that normally engaged in by a tourist in the Rotunda of the Capitol. Conviction for conduct which does not satisfy these requirements, Hasty contends, violates his First Amendment rights. Therefore, he contends that his convictions must be reversed because the jury had no opportunity to consider his conduct under the statute as restricted by the tourist standard.

### A. Statutory Construction of D.C.Code § 9–112(b)(7)

 Hasty was convicted under D.C.Code § 9–112(b)(7), which provides:

> It shall be unlawful for any person or group of persons willfully and knowingly ... [t]o parade, demonstrate, or picket within any of the Capitol Buildings.

We have previously recognized that the Rotunda of the Capitol is a "'unique situs for demonstration activity' and is a place traditionally open to the public ... to which access cannot be denied broadly or absolutely." *Wheelock v. United States*, 552 A.2d 503, 506 (D.C.1988) (quoting *Kroll v. United States Capitol Police*, 590 F.Supp. 1282, 1289–90 (D.D.C.1983)); *see also Berg v. United States*, 631 A.2d 394, 397–98 (D.C.1993); *Abney v. United States*, 616 A.2d 856, 859 n. 8 (D.C.1992). Content neutral restrictions on time, place, and manner of expression in a public forum are permissible. *Berg*, 631 A.2d at 399. However, statutes which curtail expressive conduct in such forums must be "'narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication.'" *Id.* at 398 (quoting *United States v. Wall*, 521 A.2d 1140, 1143 (D.C.1987)); *Wheelock*, 552 A.2d at 506.

 In order to save D.C.Code § 9–112(b)(7) from being unconstitutionally overbroad and to avoid infringing on protected expression, this court has construed the statute to prohibit only certain behavior falling under the parameters of what has become known as the "tourist standard." *See Berg, supra*, 631 A.2d at 398; *Dellums, supra* note 1, 184 U.S.App.D.C. at 313 n. 22, 566 F.2d at 205 n. 22. "The 'tourist standard' restricts the scope of statutes by penalizing only conduct that is 'more disruptive or more substantial (in degree or number) than that normally engaged in by tourists and others and routinely permitted....'" *Berg*, 631 A.2d at 398 (quoting *Dellums, supra* note 1, 184 U.S.App.D.C. at 313 n. 22, 566 F.2d at 205 n. 22).[2] Specifically, we have construed

---

2. In *Nicholson, supra* note 1, the trial court (Judge Harold Greene) narrowly construed D.C.Code § 9–124 (1967) in order to "save the statute from unconstitutionality" on grounds of vagueness and overbreadth. 184 U.S.App.D.C. at 312, 566 F.2d at 204. The trial court concluded that

the legislative and other materials ... provide a sufficient basis for restricting the scope of section 124 to the imposition of criminal punishment for acts or conduct which interferes with the orderly processes of the Congress, or with the safety of individual legislators, staff members, visitors, or tourists, or their right to

D.C.Code § 9–112(b)(7) narrowly to make unlawful only "demonstrations that involve conduct more disturbing than the actions of a tourist would normally be, while taking into consideration the right of the people to freedom of expression." *Markowitz v. United States,* 598 A.2d 398, 409 n. 16 (D.C.1991), *cert. denied,* 506 U.S. 1035, 113 S.Ct. 818, 121 L.Ed.2d 689 (1992) (citations omitted). In *Markowitz,* we observed that the limitations placed on the statute by this court has contoured it. *Id.* This court's opinions have narrowly construed and interpreted § 9–112(b)(7) to save it from unconstitutional overbreadth insofar as it might be applied to "public forum" cases.[3] *See id.* at 400–01;[4] *Farina v. United States,* 622 A.2d 50, 59 n. 14 (D.C.1993); *see also Wheelock, supra,* 552 A.2d at 508. Thus, the "tourist standard" limits D.C.Code § 9–112(b)(7) by penalizing only "demonstrations that involve conduct more disturbing than the actions of a tourist would normally be, while taking into consideration the right of the people to freedom of expression." *Markowitz,* 598 A.2d at 409.

be free from intimidation, undue pressure, noise, or inconvenience. As so limited, the statute is constitutional.

It is appropriate, therefore, under the statute, to bar or to order from the Capitol Grounds, any group which is noisy, violent, armed, or disorderly in behavior; any group which has a purpose to interfere with the processes of the Congress, any Member of Congress, congressional employee, visitor, or tourist; any group which has the effect, by its presence, of interfering with the processes of the Congress, any Member of Congress, congressional employee, visitor, or tourist; and any group which damages any part of the buildings, shrubbery, or plant life.

184 U.S.App.D.C. at 312–13, 566 F.2d at 204–05. In a footnote, the trial court articulated what has become known as the "tourist standard" as follows:

In each category, the conduct would have to be more disruptive or more substantial (in degree or number) than that normally engaged in by tourists and others routinely permitted on the Grounds.

184 U.S.App.D.C. at 313 n. 22, 566 F.2d at 205 n. 22. This court affirmed the dismissal of the charges in *Nicholson,* stating that the trial court "adopted a construction of the statute which saves it from unconstitutionality." *United States v. Nicholson,* 263 A.2d 56, 57 (D.C.1970).

3. The government assumes that the Capitol Rotunda is a public forum for First Amendment purposes. *See Markowitz, supra,* 598 A.2d at 406

**B. Claim of Instructional Error**

Hasty argues that the trial court erred in failing to instruct the jury that the "tourist standard" is an element of the offense of demonstrating within a U.S. Capitol Building. However, this court has held that the "tourist standard" is "not an element of any offense. Rather, the standard is a means of determining if a statute, as applied in a particular case, is constitutional." *Reale v. United States,* 573 A.2d 13, 15 (D.C.1990). In *Reale,* a prosecution for a violation of § 9–112(b)(4) (disorderly conduct in the public galleries of the House of Representatives), the appellant contended that "the trial court should have instructed the jury that the 'tourist standard' is an element of the [charged] offense." *Id.* at 15. This court held that "[a]n explanation of the 'tourist standard' was properly omitted from the jury instructions in this case because it is not an element of any offense." *Id.* This court explained that

n. 7. However, the issue was left unresolved in *Wheelock, supra,* 552 A.2d at 506 n. 2.

4. The government contends that, under pertinent Supreme Court caselaw, § 9–112(b)(7) is not facially invalid and thus no limiting construction was required. *See, e.g., Osborne v. Ohio,* 495 U.S. 103, 112, 110 S.Ct. 1691, 1697, 109 L.Ed.2d 98 (1990). Under the Supreme Court's First Amendment overbreadth doctrine,

where a statute regulates expressive conduct, the scope of the statute does not render it unconstitutional unless its overbreadth is not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. Even where a statute at its margins infringes on protected expression, facial invalidation is inappropriate if the remainder of the statute ... covers a whole range of easily identifiable and constitutionally prescribable ... conduct.

*Id.* (internal quotations and citations omitted). The government argues that insofar as § 9–112(b)(7) prohibits parading, picketing and demonstrating "within any of the Capitol Buildings," its reach is plainly constitutional in most applications and that it is only at the "margins," in the Rotunda and in other, as yet unidentified, public forums "within" those buildings, that there is any potential First Amendment problem. The government, however, concedes that this court has already placed a narrowing construction on this particular statute. Thus, we address the issues raised in the context of our controlling precedents.

the [tourist] standard is a means of determining if a statute, as applied in a particular case, is constitutional. The issue of a statute's constitutionality arises only where it is raised as a defense to prosecution. Thus, the government need not establish the constitutionality of its statutes each time it prosecutes a defendant.

*Id.* This court's disposition in *Reale* might seem to dispose of appellant's argument that a jury instruction was required. It does not.[5]

■ In addressing the First Amendment overbreadth doctrine, the Supreme Court has stated that "where a State Supreme Court narrows an unconstitutionally overbroad statute, the State must ensure that defendants are convicted under the statute as it is subsequently construed and not as it was originally written." *Osborne, supra* note 4, 495 U.S. at 118, 110 S.Ct. at 1701 [6] (citing *Shuttlesworth v. Birmingham,* 382 U.S. 87, 91–92, 86 S.Ct. 211, 213–214, 15 L.Ed.2d 176 (1965)). Thus, while the tourist standard is not an "element" of § 9–112(b)(7), because of

the limiting construction placed upon it by this court, consistent with that construction, the government must prove to the trier of fact essentially that the conduct for which Hasty is charged was "more disruptive or more substantial (in degree or number) than that normally engaged in by tourists or others routinely permitted" in the Rotunda of the Capitol. The government concedes, as it must, that it has that burden.[7] It follows that, in order to ensure that a defendant is convicted of the offense as construed to avoid unconstitutional overbreadth, the trial court must adequately instruct the jury so as to describe accurately the conduct proscribed and for which the defendant is on trial. *See Osborne,* 495 U.S. at 118, 110 S.Ct. at 1700–1701.[8]

■ The government also concedes that in a prosecution under § 9–112(b)(7) for demonstrating in a public forum, upon timely request, and where supported by the evidence, the trial court is obligated to instruct the jury consistent with the tourist standard.

5. We note that in *Reale,* an element of the disorderly conduct offense was an "intent to impede, disrupt, or disturb the orderly conduct of any session of the Congress." Appellant's conduct in that case, consisting of standing up, shouting "homes not bombs" and attempting to display a banner while the House of Representatives was in session, clearly fell within the elements of the offense. *See id.* at 14–15. Thus, instruction on the elements of the offense assured that appellant's conduct was "more disruptive or more substantial ... than that normally engaged in by tourists and others and routinely permitted" and no instruction on the "tourist standard" was required. *See Nicholson, supra* note 1, 184 U.S.App.D.C. at 313 n. 22, 566 F.2d at 205 n. 22.

6. *Reale* was decided on the same day as the Supreme Court's decision in *Osborne.*

7. Although making that concession, the government states that if it were at liberty to consider the issue anew, it might question whether this statute is overbroad and unconstitutional, thereby requiring a limiting construction in order to be upheld. See note 4, *supra.*

8. In *United States v. Gaudin,* — U.S. —, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), the government conceded that "materiality" was an element of the offense of making false statements which the government must prove under 18 U.S.C. § 1001. The trial court, however, did not submit the issue of "materiality" to the jury, but instead instructed the jury that the statements

were material. The Court of Appeals for the Ninth Circuit reversed the conviction. In affirming, the Supreme Court pointed out that the Fifth and Sixth Amendments of the Constitution give a criminal defendant the right to have a jury determine his guilt of every element of the crime with which he is charged and that the trial judge's refusal to allow the jury to pass on the "materiality" of [appellant's] false statements infringed that right. *Id.* at —, 115 S.Ct. at 2320. The Court reiterated that the jury's role as factfinder is "not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *Id.* at —, 115 S.Ct. at 2316.

In a concurring opinion, joined by Justices O'Connor and Breyer, Chief Justice Rehnquist pointed out that the Court's decision does not resolve the conflict whether "materiality" is an element of the false statement clause of § 1001, but that materiality was assumed because of the government's concession. *Gaudin, supra,* — U.S. at —, 115 S.Ct. at 2320. In the case before this court, while the government does not concede that the "tourist standard" is an element of the offense, it concedes that the narrow construction placed upon the statute by the courts requires that in a prosecution under § 9–112(b)(7) for demonstrating in the Capitol Rotunda, the government must prove to the jury that the defendant's conduct violated the "tourist standard" and that the jury must be instructed accordingly, if timely requested, and warranted by the evidence.

Where a narrowing construction or interpretation has been placed by a court upon a statute that, absent the narrowing construction, might otherwise be unconstitutional in some respect, that narrowing construction or interpretation, upon request and where supported by the evidence, must be the subject of proof at trial and should be submitted to the trier of fact for its determination. *See Osborne, supra* note 4, 495 U.S. at 118–19, 110 S.Ct. at 1700–01; *see also Gaudin, supra* note 8, —— U.S. at ——, 115 S.Ct. at 2317–18. However, the government contends that the trial court's instruction, particularly its definition of "demonstration," adequately conveyed the substance of the "tourist standard" to the jury and encompassed Hasty's conduct in this case. We examine this argument in light of the jury instruction provided.

■ In defining "demonstration," the trial court instructed the jury as follows:

A demonstration . . . is a public showing or display by a group of persons assembled together of their feelings, such as sympathy or antagonism, toward a cause or action of public interest, which showing or display, by its very nature, necessarily intrudes upon the senses of those within earshot or eyesight.

The government asserts that the trial court's admonition that the defendant's conduct must, "by its very nature, necessarily intrude[ ] upon the senses of those within earshot or eyesight" adequately conveyed that the jury must find that the defendant's conduct was more substantial or disruptive than that of an ordinary group of tourists. In support of its contention, the government points to the Webster's [9] definition of "intrude," *i.e.*, "to thrust oneself in," to "enter by intrusion," and "to thrust or force in, into, on, or upon," especially "without permission, welcome, or fitness." This argument is not persuasive. The court did not instruct the jury on the definition of "intrude," and absent a definition, any unwelcome words or conduct might be intrusive to some listener or observer. Even assuming that the jury understood the word in its typical sense, the instruction did not require the jury to determine whether Hasty's conduct was more substantial or disruptive than that of the ordinary tourist. Therefore, we cannot say that the instruction adequately conveyed the "tourist standard."

Nor was the evidence in this case such that the jury necessarily had to find that Hasty's conduct was more substantial (in degree) than that normally engaged in by tourists and others routinely permitted in the Capitol Rotunda. The government's evidence showed that Hasty and fourteen others entered the Rotunda and gathered in the center in protest of the United States' foreign policy concerning Central America. The group recited aloud the Lord's Prayer, historic speeches and scriptural passages and sang and prayed aloud for about five minutes. They refused to leave when the police requested them to do so, and, finally, knelt down in the center of the Rotunda before being arrested. There was testimony that they were "blocking the direct route from north to south through the Rotunda, praying and reading aloud, "bringing attention to them[selves] . . . [and] were loud enough to bring attention to their area" in the center of the Rotunda. Other tourists joined the group in song, but ceased when requested to do so. Hasty did not dispute his participation, but he testified that he was there merely to pray for peace and justice in Central America and throughout the world.

The evidence did not show indisputedly that Hasty was excessively noisy, violent, armed, or disorderly or that he had a purpose to interfere with the processes of the Congress, any member of Congress, congressional employee, visitor, or tourist; or had the effect, by his presence, of interfering with the processes of the Congress, any member of Congress, congressional employee, visitor, or tourist. *See Nicholson, supra* note 1, 184 U.S.App.D.C. at 312–13, 566 F.2d at 166–67. Although the direct route of the Rotunda was blocked, there was no evidence that anyone was impeded from moving in or through the Rotunda.[10] Therefore, absent

---

9. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971).

10. As we observed in *Wheelock, supra,*
that tourists would have to detour around a group standing in the center of the Rotunda, is

an instruction, we are not persuaded that the jury's verdict of guilty necessarily derived from a finding that Hasty's conduct was more disruptive than that of an ordinary tourist.

## C. *Standard of Review*

The government argues that Hasty's claim of instructional error is subject to plain error review because Hasty did not request explicitly an instruction on the tourist standard. Plain error review is appropriate where no objection to an instruction is made at trial. *Foreman v. United States,* 633 A.2d 792, 795 (D.C.1993). Under this standard, "[t]here must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). The error must be (1) "obvious or readily apparent," and "clear under current law"; and (2) "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Foreman,* 633 A.2d at 795. Both prongs must be satisfied. *Id.* Against that standard, we consider the government's argument for plain error review.

Hasty requested in writing that the trial court instruct the jury that it must find that he "willfully and knowingly caused a material and substantial disruption so as to interfere with the business of Congress or tourist activity" and that the "demonstration activity was materially and substantially disruptive." Hasty cited *Tinker v. Des Moines School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) and *Nicholson, supra* note 1, 184 U.S.App.D.C. 275, 566 F.2d 167. At trial, Hasty repeated his request for this instruction, and he objected to the instruction on demonstrating as proposed by the court. In making a motion for judgment of acquittal on the demonstration charge, Hasty's counsel argued that the government had not shown a substantial disruption of Congressional busi-

ness or the usual activities in the Rotunda. The trial court expressed the view, that under its definition of demonstrating, that showing was not required. Counsel cited to the *Nicholson* decision in support of his argument. Counsel then specifically referred the court to Judge Harold Greene's opinion in *Nicholson, supra* note 1, in which a similar statute was challenged for constitutional overbreadth, and the court preserved its constitutionality by "reading into it that there had to be a substantial disruption or a material disruption ... or standard of that kind ... in order for there to be a case under [the] statute." Counsel requested that the court read *Nicholson,* in which the tourist standard is first articulated. The trial court denied the motion.[11] Subsequently, in the conference concerning jury instructions, Hasty requested that the court reconsider his proffered definition of demonstrating and objected to the instruction as framed by the court.

We agree that Hasty's request for a jury instruction requiring "material and substantial" disruption did not reflect the tourist standard, as the government points out. The tourist standard does not require that the government prove substantial, material, or even *de minimis* disruption; it protects "only conduct that is not more disruptive than that of a group of tourists." *Farina, supra,* 622 A.2d at 59 n. 14. However, in view of Hasty's requested instruction, his earlier reference to *Nicholson,* the constitutional concerns with § 9–112(b)(7), and Hasty's objection to the definition as given, there was a sufficient record to "direct the judge's attention to the correct rule of law." *See Whitaker v. United States,* 617 A.2d 499, 508 (D.C.1992) (a defective or erroneous charge request may be sufficient to require correct charge) (citations omitted); *but cf. Thoma v. Kettler Bros., Inc.,* 632 A.2d 725,

likely not only to be a fairly common occurrence when tourists are in the Rotunda but cannot be deemed to have unreasonably interfered with such traffic or the orderliness and peacefulness of activity in the Rotunda. Tourists and others passing through the Rotunda do not always *stay where they are supposed to.* ...
552 A.2d at 508.

11. Hasty also had filed a motion to dismiss the information on constitutional grounds, arguing that § 9–112(b)(7) was unconstitutionally overbroad, and alternatively, that the statute should be given a *"Nicholson*-like construction" to prohibit only demonstrations that are "seriously disruptive." This motion was denied as untimely filed.

732 (D.C.1993) (the trial court has no duty to correct an instruction) (Sullivan, J., concurring). Moreover, where a statute has been narrowed by interpretation by the jurisdiction's highest court, "the State must ensure that defendants are convicted under the statute as it is subsequently construed." *Osborne, supra* note 4, 495 U.S. at 118, 110 S.Ct. at 1701. Hasty's arguments were sufficient to alert the trial court to these concerns. Therefore, on this record, we consider Hasty's claim of instructional error to be adequately preserved.

Finally, the government argues that appellant has failed to establish that any error in the court's instruction affected his substantial rights. The government contends that the evidence was strong and undisputed, with appellant's conduct captured on videotape and shown to the jury at trial. It points out that while Hasty characterized his conduct as "prayer" rather than demonstration, he never disputed that he engaged in the acts shown by the evidence at trial.

 Where an error is of constitutional dimension, "an otherwise valid conviction should not be set aside if the reviewing court can say 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *White v. United States,* 613 A.2d 869, 874 (D.C.1992) (quoting *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). We are persuaded that the failure to instruct on the "tourist standard" on the facts of this case left the jury without guidance as to the nature of the expressions which are proscribed by the statute in what is conceded, for purposes of this case, to be a public forum. On the instruction provided, the jury could convict Hasty for expression protected by the First Amendment. The prohibition of any speech which simply "intrudes upon the senses of those within earshot or eyesight," as the trial court instructed, encompasses many forms of expression. Such an overbroad interpretation of the nature of the conduct prohibited can impermissibly infringe upon First Amendment rights. Instructional guidance was required to assure that the jury did not convict Hasty for engaging in protected speech. *See Osborne, supra* note 4, 495 U.S. at 118, 110

S.Ct. at 1700. It is, after all, the jury's function "not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *Gaudin, supra* note 8, —— U.S. at ——, 115 S.Ct. at 2316. Therefore, we cannot say that the error was harmless beyond a reasonable doubt.

### III.

Finally, Hasty argues that his conviction for unlawful entry is invalid because it is grounded on an unconstitutional arrest. He contends that if he cannot be found guilty of demonstrating, the unlawful entry conviction must be reversed because the government failed to prove any additional specific factor establishing that he otherwise had no legal right to remain in the Capitol Rotunda.

 In reviewing the constitutional application of the unlawful entry statute involving a public property, this court must consider: " '(1) [whether] a person lawfully in charge of the premises expressly order[ed] the [demonstrators] to leave, and (2) [whether], in addition to and independent of the evictor's wishes, there exist[ed an] additional specific factor establishing the [demonstrators'] lack of a legal right to remain.'" *Berg, supra,* 631 A.2d at 399 (quoting *O'Brien v. United States,* 444 A.2d 946, 948 (D.C.1982)) (alteration in original). Lieutenant Howse testified that he was in charge of the Rotunda when the demonstration occurred and that, using a bullhorn, he ordered the demonstrators to cease and desist. When they refused, he ordered them to leave. Thus, the first prong of the test was met. *See id.* The second prong was not met, however, since Hasty's arrest under the demonstration statute has not been shown to be valid. In *Wheelock, supra,* we held that

[c]losing the area for security reasons arising from the presence of demonstrators cannot serve to bootstrap the security concern into an independent factor justifying their arrest [for unlawful entry].

552 A.2d at 509. Likewise, in this case, if the reason for ordering Hasty to leave the Rotunda was to preclude him from engaging in activities protected by the First Amendment,

that claim could not serve as a basis for establishing that Hasty had no right to be in the Rotunda. *Id.; Berg,* 631 A.2d at 399.[12]

For the foregoing reasons, the judgments of conviction appealed from hereby are reversed, and the case is remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

GALLAGHER, Senior Judge, concurring:

Initially, I agree with the government's assertion here that the statute involved, D.C.Code § 9–112(b)(7) is constitutional on its face, and needs no narrowing construction to save it. But, on the other hand, we are not writing on a clean slate in this case as this court has previously decided that what is called the "tourist standard" must be applied in the trial court to save the statute,[1] which provides:

> It shall be unlawful for any person or group of persons willfully and knowingly ... [t]o parade, demonstrate, or picket within any of the Capitol Buildings.

I see nothing constitutionally unreasonable in restricting demonstrators to the outside of the Capitol buildings. In actuality, the protestors are able to reach the same audience outside as inside the buildings, because the public enters and exits the same buildings. In any event, it is not an unreasonable First Amendment restriction to prevent demonstrations in the corridors of those buildings. The grounds immediately adjoining the Capitol afford all sorts of opportunities for demonstrators to be heard and seen without entering the corridors of the buildings to demonstrate and thereby adversely affect the internal process of government for no saving reason, constitutionally.

Here, the defendants were avowedly a group of persons protesting the government's policies in Central America. It would seem, therefore, in relation to the "tourist standard" test, that by definition the defendants were not engaged in activities "normally engaged in by tourists."

I agree that prior decisions of the court require the application in the trial court of the "tourist standard" test to save the constitutionality of the statute. As the majority opinion points out, the trial judge here did not comply sufficiently with this court's controlling opinions on that score.

For this reason, I concur in the result in this proceeding.

---

12. In *Berg*, it was established that the demonstrators were in violation of a building regulation. 631 A.2d at 400. The trial court had instructed the jury correctly that

> the demonstration statute, the obstruction statute, or the Capitol police General Order No. 303.1, or any combination of them, could have

satisfied the "additional specific factor" prong of the unlawful entry test.
Id. at 399.

1. The government was required, however, to assert its contentions with due regard for the controlling opinions of this court in relation to the statute.