Keith L. COATES, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CF–464.

District of Columbia Court of Appeals.

Argued Jan. 8, 1998.
Decided Feb. 19, 1998.

David E. Jones, Washington, DC, appointed by this court, for appellant.

John L. Brownlee, Assistant United States Attorney, with whom Mary Lou Leary, United States Attorney, and John R. Fisher and Linda McKinney, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, RUIZ and REID, Associate Judges.

REID, Associate Judge:

Appellant Keith L. Coates was convicted of assault with intent to rob while armed, in violation of D.C.Code §§ 22–501, –3202 (1996); and carrying a dangerous weapon (knife), in violation of D.C.Code § 22–3204.[1] He filed a motion for a new trial. The motion was denied, and he filed a timely appeal contending that his Fifth Amendment constitutional privilege against self-incrimination was violated because (1) the trial court failed to grant a requested mistrial when a police officer was allowed to comment on his silence after the officer had seized him by the pants, thus indicating he was in custody; and (2) the government improperly commented on his pre-arrest and pre-*Miranda*[2] silence during both its closing argument and rebuttal. We affirm the judgment of the trial court.

## FACTUAL SUMMARY

On May 18, 1995, Xiaohui Jia, an employee of the China Kitchen restaurant, located at 5585 South Dakota Avenue in Northeast Washington, sought to deliver an order to an address on Rock Creek Church Road, Northeast.[3] When he arrived at the address, he saw two people sitting between two buildings. One person, whom Mr. Jia identified as Coates, approached him. Coates said that he had ordered the food, and asked Mr. Jia to roll down his car window. Mr. Jia reached for the delivery below the front passenger seat. When he turned around with the food, Coates put a knife on Mr. Jia's left shoulder, near his neck. Mr. Jia asked whether Coates wanted money or the food.

Mr. Jia moved his body, except for his legs, to the front passenger seat. Coates became angry, put his head into Mr. Jia's car and was in the process of directing the knife to Mr. Jia's leg when Mr. Jia pushed his hand away. The knife fell into the cushion, and Mr. Jia handed the food to Coates.

---

1. During his first trial on the charges, the jury could not reach a verdict. After his second trial resulted in conviction, he was sentenced to a prison term of five to fifteen years for assault with intent to rob, and consecutively, to one year for carrying a dangerous weapon.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. A male caller had placed a delivery order around 10 p.m. When the restaurant sought to verify the order through the telephone number that the caller had given, the woman who answered the phone denied placing an order. Later, a male called the restaurant inquiring about the delivery. When the restaurant explained what had happened, the caller asked that the verification call be made again. This time the male answered the telephone and the delivery was sent out. Subsequently, it was discovered that the telephone number used by the caller belonged to appellant's great grandmother who resided across the street from him.

Coates took the food with one hand while his other hand was placed on the knife. He demanded money, and as Coates pulled the knife out of the cushion, it dropped to the floor. When he saw another car come into view, Coates also dropped the food and said, "never mind."

Mr. Jia turned and saw a police patrol car. As he arrived on the scene, Officer Thaddeus Carrington, a fifteen year veteran, saw a struggle between Mr. Jia and Coates, but did not know the nature of the struggle. He heard someone on the sidewalk call out "Keith, Keith, Keith," and then saw Coates begin to walk away from Mr. Jia's car. When Coates called out the officer's name, Officer Carrington recognized him as someone he had known for years.[4]

Officer Carrington testified as a government witness at Coates's trial. He stated that after Coates called his name, he asked Coates "what was going on. He didn't have a response to the first question." Defense counsel raised no objection to this testimony. The officer then spoke with Mr. Jia and realized that a crime had taken place.[5] Coates's theory was that the knife Coates was accused of using actually belonged to Mr. Jia. During Officer Carrington's testimony, he was asked: "Now at the time that you stopped the defendant, did the defendant ever say anything to you or make any indication that the knife came from this gentleman?" Before Officer Carrington could respond, the trial judge, *sua sponte*, stopped the proceedings and asked both counsel to approach the bench.

The bench conference concerned the due process implications of Coates's silence when Officer Carrington posed questions to him at the scene of the crime before he was arrested. Counsel for Coates did not object when the questions were first posed. Nor did

counsel initially object the following day when the bench conference continued. After discussion, focusing in part on whether Coates was in custody or under arrest at the time of his silence, the trial court gave its ruling which reads in part:

> while ... I find the defendant may have been in custody, he was ... pre-arrest, [pre-*Miranda*] silence that the government is seeking to use to establish consciousness of guilt[.][U]nder these circumstances, I'm going to allow the Government to ask the question....

The trial court added that Officer Carrington was conducting an investigation to determine what had happened, and was not interrogating Coates. When the trial court had completed its ruling, counsel for Coates said: "I was just going to note a motion for a mistrial based upon the sort of anticipatory motion based on the...." The trial judge interrupted him to say: "I'm not going to rule on that because it hasn't come out yet.... But based on the reasons I indicated it will be denied."

When the bench conference ended and the trial resumed, the government did not repeat the question concerning the knife. Rather, the following exchange took place between government counsel and Officer Carrington:

> Q. Officer Carrington, what was the defendant doing when you went over to Mr. Jia to speak to him?
>
> A. Defendant doing? The defendant ..., at that time, was in the custody of Officer O'Boyle.[6] If you're talking about after the police stop. Is that correct?
>
> Q. Immediately after you stopped him.
>
> A. Immediately after we stopped him, he was standing along my side. At that point I asked the defendant several times what

---

4. Coates is the nephew of the former fiancee of the officer's brother.

5. Officer Carrington recovered the knife that Coates had used. It was located on the driver's side of the car. Another officer found the case for the knife in front of the police cruiser. Mr. Jia identified the knife as the one used by Coates. He also identified Coates as his assailant.

6. Officer James Joseph O'Boyle happened to pass the spot where Officer Carrington and Coates

were standing. He asked Officer Carrington what was going on. He placed Coates in handcuffs, put him in the back of his patrol car, and then returned to speak with Officer Carrington. He interviewed Mr. Jia briefly, returned to his patrol car to get Coates, and took him over to Mr. Jia. Mr. Jia identified Coates as his assailant. At that point, Coates was searched and placed under arrest.

happened, what was he doing.... At no time did I get a response from him.

Q. What was he doing when you were talking to him?

A. He was more or less—his response was a chuckle, a wave, "I don't know," that kind of response. All indirect gestures and responses.

Counsel for Coates did not object to this line of questioning.[7]

The defense theory, as articulated in the opening statement in behalf of Coates, was that Mr. Jia kept the knife in his car to protect himself from robbers because he had been robbed on two prior occasions. In cross-examining Officer Carrington, counsel for Coates elicited testimony that Mr. Jia, who was not proficient in english, indicated that he "went to his [own] back pocket" while trying to tell Officer Carrington what had happened.[8] When counsel for Coates cross-examined Mr. Jia at trial, several questions focused on the knife, and counsel tried to show that Mr. Jia did not initially mention a knife to Officer Carrington. Closing argument for Coates focused on the knife, and counsel asked the jury to conclude that "there is a possibility that Mr. Jia had the knife based upon the testimony in this case...."

During the government's closing argument, and without objection, the prosecutor commented on Coates's silence when queried by Officer Carrington: "Officer Carrington ... asked the defendant what's happening and the defendant just shrugged his shoulder, didn't say anything.... Officer Carrington ... had asked the defendant if he was the one that ordered this food. And the defendant just continued to shrug his shoulders and say nothing." In its rebuttal, the prosecutor addressed the defense theory that the knife belonged to Mr. Jia and had not been used by Coates. After discussing de-

tails, including the discovery of the sheath for the knife on the street rather than in Mr. Jia's car, the prosecutor said in part:

If you don't believe even with all this corroboration, if you don't believe Mr. Jia, ask yourselves a few more questions. Ask yourselves why if the knife somehow came from Mr. Jia, why the defendant didn't run away? Mr. Jia was inside a car. The defendant would have had plenty of opportunity to run from Mr. Jia with the knife.... [A]sk yourselves why when Officer Carrington arrived on the scene, he didn't run to him and say, I'm so glad you're here, ... this guy just pulled a knife on me, I was just coming to get Chinese food. He knew Officer Carrington socially. There was no reason for him to be afraid of him. He could have told him immediately. But what did he do ... when Officer Carrington arrived on the scene?.... [H]e just stood there and shrugged his shoulders.

Defense counsel raised no objection to the rebuttal argument. Nor did he request any curative instruction.

After his conviction, Coates moved for a new trial based both on the testimony of Officer Carrington regarding Coates's silence prior to the giving of any *Miranda* warnings, and on the government's comments concerning his silence. The trial court found that Coates "clearly ... was not under arrest at the time the officer was asking the questions and investigating...." Furthermore, the court pointed out that Officer Carrington never responded to the government's question pertaining to whether Coates said anything to him to indicate that the knife came from Mr. Jia. Hence, said the trial court, there was no prejudice.

### ANALYSIS

Coates contends that his Fifth Amendment constitutional privilege against self-incrimina-

---

7. Counsel posed no objection until after direct examination, cross-examination and redirect examination had concluded. After asking for a bench conference, counsel stated: "Your Honor, I just want to officially make the motion for a mistrial based on the post-arrest silence or silence by Mr. Coates in the face of the accusations by Mr. Jia." However, the question concerning Mr. Jia and the knife had not been posed again

after the trial court's bench conference. Instead, the questions after the bench conference called *sua sponte* by the trial judge focused on what Coates was doing when Officer Carrington "went over to Mr. Jia to speak to him."

8. Mr. Jia explained that he gestured to show the officer "where [Coates] pulled out the knife."

tion was violated because the trial court allowed his pre-arrest and pre-*Miranda* silence to be used as substantive evidence of his guilt. The government argues that pre-arrest and pre-custody silence which is not compelled may be used as evidence of guilt, and that there was no error with respect to the government's comments on Coates's silence during the closing and rebuttal arguments.

 Defense counsel did not raise a timely objection either to the government's questions, or to the closing and rebuttal comments regarding Coates's pre-arrest and pre-*Miranda* silence.[9] Because of Coates's failure to raise timely objections, we review this matter for plain error. Under the plain error standard, "[t]he error must be (1) 'obvious or readily apparent,' and 'clear under current law'; and (2) 'so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.'" *Hasty v. United States*, 669 A.2d 127, 134 (D.C. 1995) (quoting *Foreman v. United States*, 633 A.2d 792, 795 (D.C.1993)). *See also United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993). We conclude that the trial court did not plainly err in allowing Officer Carrington to be questioned regarding Coates's pre-arrest and pre-*Miranda* silence, and in permitting the government to comment on this silence during closing and rebuttal arguments.

In *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the Supreme Court held that "the use of prearrest silence to impeach a defendant's credibility does not violate the Constitution." *Id.* at

240–241, 100 S.Ct. at 2130. However, neither the Supreme Court nor this court has resolved the issue as to whether pre-arrest silence may be used as substantive evidence of a defendant's guilt.[10] Coates relies on three of our cases to support his argument: *(Lewis) Lyons v. United States*, 622 A.2d 34 (D.C.1993); *Hill v. United States*, 404 A.2d 525 (D.C.1979) *cert. denied*, 444 U.S. 1085, 100 S.Ct. 1042 (1980); and *Henderson v. United States*, 632 A.2d 419 (D.C.1993). *(Lewis) Lyons* has been vacated and thus has no force of law.[11] *Hill* involved the use of silence to impeach, not as evidence of guilt. *Henderson* concerned the use of appellant's silence, to demonstrate guilt, after he had consulted an attorney and failed to tell his friends where he was on the night of a murder.

Other courts have commented on whether pre-arrest and pre-*Miranda* silence may be used as substantive evidence of guilt. A panel majority of the District of Columbia Circuit stated, in passing, in *United States v. Moore*, 322 U.S.App.D.C. 334, 342, 104 F.3d 377, 385 (1997), that "the prosecution's use of [a defendant's] pre-trial silence in its summation [as substantive evidence of guilt] violated his Fifth Amendment rights." However, that case involved an issue of post-arrest silence and the appellant's conviction was affirmed. Federal circuit courts which have decided the matter are divided on this issue.[12]

Accordingly, as the Second Circuit has stated: "we do not see how an error can be plain error when the Supreme Court and this court have not spoken on the subject, and the

---

9. In addition, defense counsel made no timely argument that Coates was denied his Fifth Amendment constitutional right to proper warnings under *Miranda v. Arizona, supra*.

10. The Supreme Court did not reach this issue in *Jenkins:* "Our decision today does not consider whether or under what circumstances prearrest silence may be protected by the Fifth Amendment." 447 U.S. at 236 n. 2, 100 S.Ct. at 2128 n. 2.

11. The order vacating *(Lewis) Lyons* is set forth at 635 A.2d 902 (1993). Although rehearing *en banc* was granted, the case was not heard because, on the day before the scheduled oral argument, the appellant agreed to enter a guilty plea to a lesser included offense. The case was re-

manded to enable the trial court to accept the plea, and the oral argument never took place.

12. See *United States v. Thompson*, 82 F.3d 849 (1996). "The First, Seventh and Tenth Circuits have held that pre-arrest silence comes within the purview of [the] proscription of comment on a defendant's privilege against self-incrimination.... The Eleventh Circuit has ruled that under *Jenkins*, comment on pre-arrest silence is permissible.... [T]he Fifth Circuit [has] held that, where the defendant's silence is 'neither induced by nor a response to any action by a governmental agent,' the Fifth Amendment is inapplicable." *Id.* at 855 (citations omitted).

authority in other circuits is split." *United States v. Alli–Balogun,* 72 F.3d 9, 12 (2d Cir.1995). Moreover, here, Coates's silence came before Officer Carrington was aware of exactly what had happened. Indeed, we see no evidence, in the record before us, of governmental compulsion at the time Coates was questioned and remained silent or shrugged his shoulders. In his concurring opinion in *Jenkins, supra,* Justice Stevens said: "I would reject [petitioner's] Fifth Amendment claim because the privilege against compulsory self-incrimination is simply irrelevant to a citizen's decision to remain silent when he is under no official compulsion to speak." 447 U.S. at 241, 100 S.Ct. at 2131 (Stevens, J. concurring) (footnote omitted). Furthermore, although the record on appeal is not crystal clear, it appears that Officer Carrington's reference to Coates's silence concerned a short period of time before the officer concluded that a crime had actually taken place, and a time when Coates was under absolutely no government compulsion to speak. Consequently, under the first prong of the plain error standard, there is no "obvious or readily apparent" error "under current law," let alone plain error. *Hasty, supra,* 669 A.2d at 134.

With respect to the second prong of the plain error standard, we see no error, and thus nothing "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Id.* Although the government attorney asked Officer Carrington whether Coates said anything to make him believe that the knife introduced into evidence by the prosecution belonged to Mr. Jia, that question was never answered because the trial court, *sua sponte,* called for a bench conference. And, even though the trial court informed the prosecution that it could ask the question, it was never repeated. In addition, the court informed the jury, before trial commenced, that arguments of counsel are not evidence. Moreover, the government's rebuttal comment on the knife and Coates's silence came only after the defense tried to show in closing argument that

the knife belonged to Mr. Jia. Examination of this comment reveals that it was directed toward Mr. Jia's credibility, not Coates's guilt. The prosecutor prefaced the comment by saying in part: "if you don't believe Mr. Jia, ask yourselves a few more questions." Given the testimony of Mr. Jia and Officer Carrington, and the discovery of the sheath for the knife on the ground and not in Mr. Jia's car, we see no clear prejudice to Coates's substantial rights.[13]

Accordingly, we affirm the judgment of the trial court.

*So ordered.*

RUIZ, Associate Judge, concurring:

I agree that there is no plain error warranting reversal in this case. Coates does not allege that either Officer Carrington's testimony or the prosecutor's arguments at closing referred to Coates' silence after he was arrested or after the police should have advised him of his rights under *Miranda.* Whether pre-*Miranda,* pre-arrest silence comes within the protection of the Fifth Amendment is a question this court has not addressed and need not address in this case. The Supreme Court has expressly left the issue open for decision. *See Jenkins v. Anderson,* 447 U.S. 231, 236 n. 2, 100 S.Ct. 2124, 2128 n. 2, 65 L.Ed.2d 86 (1980). The U.S. Court of Appeals for the District of Columbia has recently addressed the issue of pretrial silence, but specifically in a post-arrest situation. *See United States v. Moore,* 322 U.S.App.D.C. 334, 341, 104 F.3d 377, 384 (1997). As the majority notes, the other federal circuit courts' decisions on the issue are in conflict. *See ante* at page 1104 and n. 12. Therefore, any error cannot have been plain as it was not "obvious" and "clear under current law." *Hasty v. United States,* 669 A.2d 127, 134 (D.C.1995).

---

13. We do not decide whether comment on a defendant's pre-arrest and pre-*Miranda* silence violates the Fifth Amendment to the Constitution of the United States. Nor do we determine whether Coates actually was in custody at any time when Officer Carrington questioned him. Our decision is limited to a plain error analysis.